## ALLEN, Adm'r, *vs.* GREENE.

1. When no time is limited for the performance of a covenant, it must be done *within a reasonable time.* Therefore, when the obligors in a bond for title bound themselves to make title to the obligee, which the bond showed was in a third person, and the obligee lived more than three years after the execution of the bond, during which time the obligors did not enable themselves to comply with the condition of their bond, and made no effort to procure the title, it is *prima facie* a breach of the condition of the bond in the life-time of the obligee, for which his administrator is the proper party to bring suit.

2. When the bond shows that the title is in a third person, and the obligor never procures a conveyance of the title to the obligee, nor obtains it himself, the heir of the obligee cannot take the land by descent, nor sue in his own name for a breach of the condition, whether that breach happened before or after the death of his ancestor.

3. If the obligee has not violated the contract on his part, an action may be maintained by his administrator, for a breach, although the purchase money may not have been paid.

4. But if the obligee is notified by the surety of the principal obligor, that the title is not in the person named in the condition of the bond, and promises such surety, on his request, not to pay the purchase money until the title is arranged, but afterwards, in violation of his promise, pays it, when he could, consistently with his contract, have retained it, the surety, in a suit on the bond, can reduce the damages to the extent of the purchase money.

Allen, adm'r, v. Greene.

ERROR to the Circuit Court of Benton. Tried before the Hon. Thomas A. Walker.

WHITE & PARSONS, for plaintiff:

Contract is to be construed most strongly against party giving instrument.—Pitman on Prin. & Sur. 38, (mar. 27,) 30 L. Lib.; Platt on Cor., 3 ib. 63.

The legal effect of the bond is an obligation to obtain titles and make them to plaintiff's intestate, in a reasonable time, and the three years which elapsed upon the death of intestate was more than a reasonable time.—Garnett v. Yoe, 16 Ala. 74; Platt on Cor. 145; 3 L. Lib. 65.

The bond was an independent covenant, and the right of action did not depend upon the performance of the contract by the plaintiff's intestate, nor was it necessary to tender deed or demand title.—Williams v. Harper, 1 Ala. 502; Fitzpatrick v. Hanrick, 11 ib. 785.

Where vendor has no title at the time when he is to convey, this of itself is a breach of the bond, and it is not necessary for vendee to prepare and tender deed.—Johnson v. Collins, 17 Ala. 327; Blam v. Smith, 4 Blackf. 517; Williams v. Casey, 4 Bibb, 300.

Administrator is entitled to sue for breach in the life-time of the intestate.—Brown v. Chamberlain, 12 Ala. 711; Abney v. Brownlee, 2 Bibb, 170; Hatcher v. Galloway's Ex'r, ib. 180; Rockingham v. Penrice, 1 P. Wms. 177.

The bond is payable to intestate, without naming his heirs, and a recovery at law must be in money; and as it is not a covenant running with the land, it would be assets in the hands of the administrator, and he may recover for a breach after the death of his intestate.—Leber v. Kauffelt, 5 W. & Ser. 440.

It does not appear whether the purchase money was paid at the time, or before the bond was given, or whether it was to be paid afterwards, nor is it material. The covenant to make titles was independent, and the bond gave a right to entry, and intestate did enter upon the land, and in such case he could not resist the payment of the purchase money.—Reed v. Davis, 4 Ala. 83.

The law required of Bruton that he should pay. Green, the security, told him not to pay, and it is now urged that because

Bruton did not refuse to pay, that the law will deprive him of his remedy for a failure to make him titles.

Bruton possibly might have rescinded the contract if he had chosen so to do, but he had the right to rely upon and enforce the contract, either in law or in equity, if he thought proper to do so; and so long as he regarded the contract as of force, he was bound on his part to perform it, not as a condition precedent to his right of action against the obligors in the bond, but as a part of the contract.

It was not necessary that the intestate of the plaintiff should abandon the land before he could recover on the bond.—Pinkston v. Huie, 9 Ala. 252; Haynes v. Farly, 4 Por. 528.

In construing bond, the court will look to the intention of the parties, and the condition of the bond ought to be so construed as to carry out that intention.—Whitsett v. Womack, 8 Ala. 481; Watts v. Sheppard, 2 Ala. 425.

The principal question in the case grows out of the charge of the court, which being affirmative, if erroneous, must reverse the case.—Haggerty v. Bradford, 9 Ala. 571; Pinkston & Wife v. Green & Wife, 9 ib. 19; Jackson v. Gwin, ib. 114.

There was no evidence to show that Green was the security of Chilton, nor could such evidence legally have been adduced. It would have been to contradict the face of the bond, by which both Chilton and Green were to make a deed to Bruton.—See cases cited, B'k Mobile v. Darrington, 9 Ala. 954. Here the contract is absolutely joint, and a deed by one would be no compliance.— 4 Shep. 164.

Green had no right to demand of the plaintiff's intestate that he should not pay the purchase money, nor had intestate any power to resist payment. A promise not to do so was nugatory. It imposed no obligation upon Bruton, and conferred no right upon Green. It was without consideration, without mutuality, and, as we contend, without force as a contract.

There are only three ways in which a surety can be released: 1st, by payment or satisfaction; 2nd, release or surrender by the creditor; 3d, by acts done by the creditor to the prejudice of the surety and without his knowledge and consent.—Pit. on Pr. & Sur. 111, ch. 5, (mar. 157,) 40 Law Lib.

It is the duty of the surety to inquire and inform himself whether or not his principal had performed the engagement

Allen, adm'r, v. Greene.

which he had undertaken he should perform.—Pit. on P. & Su. 70, ch. 1, (mar. 84,) 40 L. Lib.

To release surety there must be a valid common law agreement to give time to the principal.—Agne v. Steele, 8 Ala. 948; Abercrombie v. Knox et als., 3 ib. 728; Wilson v. B'k of Orleans, 9 ib. 847; Pit. on Prin. & Su. 117, ch. 5, (mar. 168,) 40 L. Lib.

There is no obligation to active diligence, on the part of the creditor—(Caller v. Vivian et als., 8 Ala. 905; 6 ib. 309)—nor is even a judgment creditor bound to active diligence.—Bank v. Golden & Lowry, 15 Ala. 616; Sawyer v. Patterson, 6 ib. 616.

The direction to sue, to absolve surety, must be clear and explicit.—Shelcan v. Hampton, 8 Ala. 942.

The liability of a surety is merely accessorial, and in this view, we think his admissions were binding upon defendant.—Evans et als. v. Keeland, 9 Ala. 42.

Rice & Morgan, and J. B. Martin, for defendant:

1. It is shown by the bond upon its face, by plaintiff's declaration, and by the conversation between defendant and plaintiff's intestate, that the former was the mere security for Chilton, the vendor, and upon that question the jury found in favor of his suretyship. At all events, the evidence tended to prove that Chilton was the vendor, and that Green was only his surety on the bond, and authorized the court to refer the question of suretyship to the jury.

2. Whenever the obligee or creditor withholds or neglects to communicate to the surety any fact or circumstance material for the latter to know, such neglect amounts to a fraud upon his rights, and he is thereby discharged from the obligation of his suretyship, and that too, whether the motive which actuated the obligee was fraudulent or honest.—Railton v. Mathews, 10 Cl'k & Finn. 942; Waters v. Creagh's Ex'r, 4 S. & P. 410; Harriss v. Brooks, 21 Pick. 194; Reese v. Berington, 2 Ves. jr. C. R. 540; Law v. East India Co., 4 Ves. 829.

3. Where the creditor has the means in his own hands to satisfy his demand, and refuses to use it, but gives it up to the debtor, the surety is discharged.—Ferguson v. Turner, 7 Mo. Rep. 497; Commonwealth v. Miller, 8 S. & R. 452; Baker v. Briggs, 8 Pick. 122; McCollum v. Hinckley, 9 Verm. 149.

(In the present case Bruton had nothing to do but withhold the purchase money, and he promised the surety to do so.)

4. If by the conduct, declarations or assurances of the creditor the surety is induced to believe that he is secure, or loses an opportunity to indemnify himself, he is not to be charged as such security.—Baker v. Briggs, 8 Pick. 122; *Exparte* Wright, 2 Ves. jr. 9; Robins v. Bingham, 4 Johns. 477; Hogaboom v. Heinck, 4 Verm. 131.

5. Whatever would avail the security in equity will constitute a good defence at law.—Taylor v. Bank of Ky., 2 J. J. Mar. 568; Teague v. Russel & Moore, 2 Stew. 420; Stradler v. Haughton, 9 Port. 334; 8 Pick. 122; 18 ib., 95; 5 Ala. 388; 7 Johns. 332; 16 S. & R. 252.

6. The mere admissions or declarations of the principal are not evidence against the surety.—Blair v. P. I. Com., 10 Mo. 567; Bondurant v. State Bank, 835.

7. Under the evidence, the charge was correct. Upon the hypothesis contained in that charge, the administrator cannot recover against the surety of the vendor.—1 Chitty's Pl. 19; Beck v. Simmons, 7 Ala. 71; Clements v. Loggins, 2 ib. 514.

8. The administrator cannot recover on such a bond, without showing a breach of the condition in the life-time of his intestate. No such breach is shown in this case. (See the cases last above cited.)

9. The administrator is estopped by the conduct and conversation of his intestate shown in evidence, from resorting to the surety.

DARGAN, C. J.—This was an action of covenant brought by the plaintiff, as administrator of 'Lecel Bruton, on a bond payable to the intestate in the penal sum of four thousand dollars, which was executed by Resen R. Chilton and the defendant. The bond is subject to the following condition: " that whereas, the said Resen R. Chilton had bargained and sold unto the said Lecel Bruton, a tract of land, being the south-east quarter of section fifteen, township fifteen, range six east, containing one hundred and sixty acres more or less : Now we the above bounden are to make unto the said Lecel Bruton, a good and sufficient title in fee simple, so soon as a title can be obtained from Jesse Driver, and as soon as this deed is made, this obligation

Allen, adm'r, v. Greene.

is to be null and void, otherwise to remain in full force and effect." A verdict and judgment were rendered in favor of the defendant, and the plaintiff brings the case to this court. It is now contended by the defendant in error, that the evidence did not show a breach of the condition of the bond in the life-time of the intestate, and therefore, the plaintiff is not entitled to recover. The bond bears date the 12th of November, 1840, and it was shown that the intestate died in June, 1844. Upon the execution of the bond, he entered into possession of the land, and continued in possession until his death. It was also shown that the title to the land was neither in the obligors, nor in Jesse Driver, but that the fee simple was vested in one Eli M. Driver, and there was no attempt to show that the obligors had executed to the intestate, or to his heirs, a deed conveying the fee simple title to the land, or that they or either of them had acquired the title from Eli M. Driver.

The general principle of law applicable to the question, whether there was a breach of the condition in the bond in the life-time of the intestate, is this, when no time is limited for the performance of a covenant, it must be done within a reasonable time.— Shep. Touch, 166; Cruise's Dig. by Greenl. vol. 2, p. 445. In the case of Garnett v. Yoe, 17 Ala. 74; we held that if a party bound himself to execute titles to land, so soon as he could obtain it, and neglected for two years to make any effort to procure the title, that this was *prima facie* a breach of the condition of the bond. In the case before us, the intestate lived more than three years after the making of the bond, during which time the obligors did not enable themselves to comply with the condition of their bond, nor does it appear that any effort was made by them to procure the title. It is therefore clear, under the authority of Garnett v. Yoe, that this was *prima facie* a breach of the condition of the bond in the life-time of the intestate, and his administrator is therefore the proper party to bring suit, even if the bond could be considered as a covenant that run with the land.

But I cannot yield my assent, that the bond in this case is a covenant that descended to the heir, and that he must sue for a breach happening after the death of the ancestor. The rule of the common law is, that the realty descends to the heir, and all covenants real, which run with the land, go to the heir on the

death of the ancestor as part or parcel of the freehold; and there-
fore, he must sue for a breach after the ancestor's death.—Chit-
ty's Plead. 19; Williams Ex'r.. vol. 1, 518; Shep. Touch.
175; Cruise's Dig. by Greenl. vol. 2, title 32, p. 453.   But to
enable the heir to sue, he must show that the land descended to
him.   If he took no title by descent, I do not see how he can sue
on a covenant respecting it.   In the case of King v. Jones, 5
Taunton 418, land was conveyed to the ancestor, and the gran-
tor covenanted for further assurance on request; the ancestor
thinking a fine was necessary to perfect his title, requested the
grantor to have it levied, which, however, was not done, and
after his death, the heir was evicted, for the reason that the fine
had not been levied.   After the eviction of the heir, the exe-
cutor of the testator brought covenant, but the court held, he
could not recover, because the land had descended to the heir,
and the ultimate damages had been sustained by him.   So in
the case of Kingdon v. Nottle, 1 M. & Selwyn, 355, the
Court of King's Bench held, that the executor could not reco-
ver upon a breach of covenant with the testator, that he, the
defendant, had a good title to convey, as the executor suffer-
ed no damage in his life-time, and the land descended to the
heir, who was evicted.   On the other hand, all the authorities
agree, that if the covenant is broken in the life-time of the
ancestor by his eviction, then his executor or administrator
must sue, for the covenant is then turned into a mere chose
in action, and the heir takes nothing by descent.   Let us test
the case before us by this principle.   It cannot be pretend-
ed that the bond gave to the intestate any title to the land, for
the bond shows upon its face, that the title was neither in the
obligors nor the obligee, and as the intestate had no title that
could descend, his heir could take nothing by descent.   The
bond is a contract upon its face for the payment of money, the
condition of which might be saved by procuring the title to the
land, and conveying to the obligee, but by its execution and de-
livery, the intestate acquired no title to the land, neither at law
nor in equity, for the title was outstanding in a stranger to the
bond, and so continued until the death of the ancestor, and even
to the present time; the heir therefore could take nothing by de-
scent, and the administrator is the proper party to sue, whether the
breach of the condition happened before or after the death of the

intestate. It is not, however, to be understood that we intend to decide, that the executor or administrator may sue in all cases on a bond for titles, for a breach of the condition after the death of the obligee; for if the obligor had the title to the land, it may be that in equity the heir would be considered as taking the fee by descent, and therefore entitled to file a bill for a specific performance, and possibly to sue on the bond for a breach of the condition after the death of his ancestor. This question is not before us, and therefore we do not intend to decide it. But I intend to confine the decision to this point: that where the obligor has no title, and the bond shows that he is to procure the title from another and to convey to the obligee, and the obligor never obtains the title, nor procures a conveyance of the title to the obligee, the heir cannot take the land by descent, nor sue in his own name for a breach of the condition, whether that breach happened before or after the death of the ancestor.

2. It also appeared from the evidence that Green, the defendant, was the security of Resen R. Chilton, and that in a short time after the execution of the bond, and after the intestate had taken possession of the land, but before he had paid any part of the purchase money, that Green informed him there was difficulty about the title of the land; that the title was in Eli M. Driver and not in Jesse Driver; that he suspected there was something wrong on the part of Chilton, and then requested the intestate not to pay the purchase money until he got the title, and if he did, he must do it at his own risk. The intestate said to Green in reply, that he would not pay the purchase money until the matter was arranged, and that he would see Chilton and get him to arrange it, and if Chilton would not, he would see Driver and get it arranged with him before he would pay the purchase money. It also appeared, that at the time of this conversation Chilton was in possession of considerable property, but is now insolvent. The court in effect charged the jury, that if they believed this testimony, and that Green was lulled into security by Bruton, and induced to believe that he was safe, and that Bruton did nothing in his life-time but slumbered on his rights, then the plaintiff could not recover.

I can see nothing in the conversation between Bruton and Green that will discharge the latter from the obligation of his bond, although the purchase money was paid to Chilton after-

4

wards.  There are but three modes by which a security can be discharged from his contract.  The first is by payment or satisfaction of the debt; the second by release; and the third by the acts or conduct of the creditor in violation of his duty to the security, and which are or may be prejudicial to his interest.

It is not insisted that the evidence shows either a satisfaction of the bond, or an intentional release of the security; but it is insisted that the payment of the purchase money by the obligee after notice that the title was not in Jesse Driver but in Eli M. Driver, and his promise not to pay it until the difficulty about the title was arranged, must operate in law as a discharge of the security.  To test this argument, let us suppose the purchase money never has been paid, and that the reason of it was that Chilton, the principal in the bond, could not procure the title. The obligee then would have faithfully observed the promise he made to Green, the security, in withholding the payment of the purchase money, but surely he would be entitled to sue for a breach of the bond.  If he, the obligee, had not violated the contract on his part, the non-payment of the purchase money would go in reduction of the damages, not in *discharge of the action.*

Again, let us suppose the terms of the contract such that Bruton, the obligee, could have refused to pay the purchase money until the title was secured to him, and being informed of the difficulty about the title, he promised Green, the security, not to pay the purchase money until the title *was arranged;* but disregarding his promise, he did pay when not compelled by his contract to do it—what would be the rights of Greene? He could not, in my judgment, claim to be released from the bond.  He could in the case supposed only claim a reduction of the damages to the extent of the purchase money.  The rule, we think, is this: if a creditor gives up or releases a collateral security for the payment of his debt, without the consent of the surety, he, the surety, will be discharged to the extent of the value of the collateral security only.—Neff's Appeal, 9 Watts & S. 3; Baker v. Briggs, 8 Pick. 122.  If we consider then that Bruton, the obligee, had the right under his contract to hold on to the purchase money, because the title was in E. M. Driver, and his promise to Green bound him not to pay until he obtained the title, still there has been a breach of the condition of the bond; and Green could only insist that the damages be reduced to the

extent of the purchase money. In any point of view, whether the purchase money has been paid or not by Bruton, if he has not violated the contract on his part, the action can be sustained; and consequently the instructions of the court were erroneous.

It will be observed, that we have argued the case upon the supposition that the purchase money has not been paid, and also upon the supposition that it had been paid, after the promise made by Bruton to Green. In conclusion, we must remark, that the record furnishes no evidence that Bruton ever paid the purchase money, nor does it show when, or under what circumstances, he was bound to pay.

If upon another trial, the terms of the contract in relation to the purchase of the land are disclosed, and it appears that Bruton paid the purchase money, in conformity with the terms of his contract, and could not have refused to do it without a breach on his part—in that case, we do not intend to decide whether or not Green could insist on reducing the damages to the extent of the purchase money. We only intend to decide, that if Bruton could have retained the money consistently with his contract until the title was secured to him, he was bound by his *promise* to Green to do it; and if in violation of this promise he paid the purchase money over to Chilton, when he had the legal right to retain it, that Green can reduce the damages to the extent thereof.

There is no error in the record, save in the instructions given to the jury, and for this the judgment must be reversed and the cause remanded.