# O'REILLY'S ADM'R vs. BRADY et al.

[BILL IN EQUITY FOR SETTLEMENT OF PARTNERSHIP ACCOUNTS.]

1. *Exceptions to master's report must be specific.*—An exception to a master's report, in stating an account, is in the nature of a special demurrer, and must specify particularly the error complained of: if it is directed to a particular portion of the report, including several distinct items, and is bad in part, it may be overruled *in toto.*

2. *Allowance to surviving partner for expenses in settling business of partnership.*—Where the business of a trading partnership is continued for a considerable length of time after the death of one of the partners, whose personal representative, in seeking a settlement of the partnership accounts in equity, elect to have a report and decree for the profits which accrued during that time, the surviving partner is entitled, at least, to an allowance and deduction for " tavern bills and other expenses incurred in the adjustment and settling up" of the affairs of the partnership.

APPEAL from the Chancery Court of Franklin.

Heard before the Hon. A. J. WALKER.

The facts of this case, as stated in the opinion of the court, were as follows: The bill was filed by the administrator of Philip O'Reilly, a deceased partner, against Michael B. Brady and Dennis C. Tynan, the two surviving partners, for an account and settlement of the affairs of the partnership. Among other things, the answer of Brady states, that the partnership was formed on the first of June, 1842, for the purpose of trading in and selling goods and groceries; that complainant's intestate died in October, 1842; that the firm "continued until the 31st December, 1843, when it was dissolved"; that after the death of said intestate, Brady had the trouble, labor and *expense* of closing up the business of the firm for a term of five or six years; that the firm had transacted business on the credit system; that the business yielded profits to a considerable amount, and to a great extent consisted in dealing in groceries; that the demands, dues, and accounts belonging to the firm, were scattered over many counties and States, and a wide extent of country; that the winding up and closing of the business was necessarily at-

tended with much labor, *expense*, and consumption of time; that the other surviving partner, Tynan, had left the country, and emigrated to Texas, whence he did not return; and that said Brady had been put to *great expense*, labor, and trouble, in and about the business of the firm, as stated, after its dissolution.   These several matters, thus stated in Brady's answer, are responsive to the bill, and are therefore evidence for him.   Immediately after stating them, and in direct connection with them, he proceeds in his answer as follows, "And he insists that a fair compensation should be allowed him, for *thus having attended to the business through a lapse of six years*, and passing money through his hands to the said O'Reilly's administrator, to the amount of about $5,788 22, as appears by the several vouchers and receipts and documents referred to, Nos. 2, 3, and 4.   He asks what shall be deemed right and fair in *the premises*."

In a statement of the assets and liabilities of the firm, marked "Exhibit B," and forming part of his answer, he includes among its liabilities the following :

" Add amount due for office rent, from 1st Jan., 1844, $75 *per annum*, 4 years............... $300 00
Amount due to Michael B. Brady, for services in collecting, *use of horse, tavern bills*, and various *other expenses incurred*, including services in the adjustment and settling up of this firm, at $800 per annum for 4 years, ($3,200).............$3,200 00"

The order of reference did not direct the register to report the evidence, but merely " to state an account between the parties."

The report of the register, so far as the foregoing charge of $3,500 against the firm is concerned, is as follows :   "The complainant sought to disallow the surviving partner, M. B. Brady, his charge of $3,500, for office rent and personal services *in attending to the business of the firm*, and winding up the same, *as shown in exhibit B*.   Proof was dispensed with as to its amount, and the question raised, whether he was entitled, in law, to make such a charge.   The master allowed it, upon the ground, *that the firm business continued for a long time after the death of P. O'Reilly, one of the members, and his representatives claiming the profits that accrued to the firm*

*during that time.* If the firm had closed immediately upon the death of one of the members, the master would have disallowed any compensation for the services (in) winding up the firm; but *in this case, the dividends here reported were made, admitting the charge to be one of the liabilities of the firm."*

The report does not purport to state the evidence which was adduced before the register; and the only exception which was taken to it, is the following: "The said complainant excepts to the report made by the register and master of this court in this case, and for cause of exception sets down the following: It will be seen by 'exhibit B' to the respondent Brady's answer, which purports to be a statement of the account of profits of said firm of Brady, Tynan & Co., that the said Brady has claimed, as a part of the expenses of said firm, *thirty-five hundred dollars* for office rent, and his personal services in winding up the unsettled business of said firm after its dissolution, by the death of Philip O'Reilly, complainant's intestate. Complainant would here also ask your Honor to refer to said Brady's answer upon this subject, in which he asks compensation for his individual services in winding up the business, &c. *The said sum of* $3,500, *as claimed as aforesaid by Brady,* has been allowed by the register and master, as shown by his report, and for. *its allowance* complainant *excepts to said report,* and asks that the same may be corrected by your Honor, as illegal and unjust."

The chancellor overruled this exception, and confirmed the report; and his action in this respect is the only matter embraced by the assignments of error.

J. B. MOORE and JOHN A. NOOE, for the appellant:

1. The allegations and proof must correspond. Relief can no more be granted upon proof without the necessary allegations, than upon allegations without proof; and this rule is applicable to both bill and answer.—16 Ala. 797; 11 *ib.* 963; 6 *ib.* 518; 1 *ib.* 333; 3 *ib.* 426; 9 *ib.* 988; 3 Porter, 470; 4 *ib.* 297; 12 Vesey, 477; 2 Dan. Ch. Pr. 411. An order of reference must be founded upon, and cannot be made more extensive than, the pleadings and proof.—3 Johns. Ch. 587. The master should only hear evidence upon matters of account included in the pleadings.—16 Ala. 621. The rules of evi-

dence, which govern courts of common law, regulate proceedings in the master's office.—2 Barb. Ch. Pr. 493.  Where the charges in the pleadings are specific, the inquiry is not open beyond the special matters charged.—3 Johns. Ch. 587. Evidence cannot be introduced of a matter not in issue, and the objection may be raised for the first time in this court.— 7 Paige, 490; 6 Johns. Ch. 567.  Brady based his claim for compensation upon the ground of his " trouble in winding up the partnership"; while the master allowed it on the ground of " his continuing the trade after O'Reilly's death",—a fact which was not in issue.  To have entitled him to compensation for carrying on the trade, he should have made the claim for it, and proved the value of such services.—13 Pet. 371; 3 Johns. Ch. 81.

2. The complainant's exception is not too general.  It points out the error complained of; and this is all that is necessary.—8 Ala. 804; 13 Peters, 369.  Even a general objection would entitle the party to the correction· of error apparent on the record, as is the case here.—13 Peters, 369. When items are excepted to, it is the master's duty to certify the evidence by which the disputed items are sustained.— 8 Ala. 805.  As he has not done so in this case, and as the report is deficient in the facts necessary to sustain the decree, it should have been set aside, even without an exception.— Lang v. Brown, 21 Ala. 190.

3. A surviving partner, in the absence of an express agreement, is not entitled to compensation for continuing the trade after the death of his co-partner.—Gow on Partnership, 381; Collyer Do., 123; 1 Paige, 398; 1 Johns. 151; 3 ib. 431; 1 Vesey & B. 170; 1 Porter, 148.  Without a stipulation to that effect, a partner is not entitled to compensation for conducting the. trade, or for settling up the business, beyond his share of the profits.—2 Iredell's Eq. 420; 2 Dev. Eq. 481; 3 Johns. Ch. 431; 7 Paige, 483; 1 Hoff. Ch. 68; 1 Harr. 401; 2 Dev. & Bat. Eq. 123; 8 Dana, 214.  It is the duty of the surviving partner, immediately after a dissolution, to settle up the business.  If he continue the trade, it is at his own risk; and he will be liable to account for the profits, besides bearing all the losses.—Story on Partnership, § 343; Collyer

Do., 79; 1 Hare, 253; 15 Vesey, 218; 5 *ib.* 539; 3 Kent's Com. 64; Equity Cases, by Parsons, 281.

4. The master's report cannot be sustained on the ground of compensation to the surviving partner for winding up the affairs of the partnership, for he was not entitled to compensation for such services.—1 Porter, 148; 2 Bouv. Inst. 133; 1 B. Monroe, 179; 2 Hill's Ch. 549; Riley's Ch. Cases, 166; 17 Pick. 519; 1 Knapp, 312.

5. The report is erroneous on its face. It is deficient in the facts necessary to sustain the decree, and should have been set aside, even without exception.—21 Ala. 192; *ib.* 433; 7 *ib.* 827; 3 Johns. Ch. 77; 6 Paige, 127; 10 *ib.* 496; 3 Dess. 584; 6 Vesey, 230; 9 Porter, 79; 2 Smith's Ch. Pr. 370.

6. The decree is erroneous, because it embraces matters not in issue between the parties, and not alleged in the pleadings.—16 Ala. 793; 20 *ib.* 768; 6 Johns. Ch. 564; Gresley's Eq. Ev. 230; Story's Equity Pleadings, § 257.

WILLIAM COOPER, *contra*, contended,—

1. That the defendant's claim for compensation, under the circumstances of the case, was properly allowed.—4 Cond. Eng. Ch. 133, 141; Collyer on Partnership, § 328; Story on Partnership, §§ 343, 349, and notes; 16 Vermont, 613; 15 Mass. 120; 2 Russ. 345; 1 Hare, 253, 265.

2. That the exception was too general and indefinite, and being certainly bad in part, was properly overruled *in toto.*—Darrington v. Borland, 3 Porter, 45; Wilkes v. Rogers, 6 Johns. 591; Alexander v. Alexander, 8 Ala. 797; Kirkman v. Vanlier, 7 *ib.* 217; Hodges v. Salmons, 1 Cox, 249; 1 Y. & Coll. 114; Green v. Weaver, 2 Cond. Eng. Ch. 204; 1 Simons, 404; 4 Paige, 382; *ib.* 427; 21 Ala. 433; 2 Smith's Ch. Pr. 372.

RICE, C. J. (After stating the facts)—An exception to the report of a master is in the nature of a special demurrer, and the party objecting must put his finger on the error; otherwise, the part not excepted to may be taken as admitted.—Darrington v. Borland, 3 Porter's Rep. 9; Story v. Livingston, 13 Peter's R. 359; Royall v. McKenzie, 25 Ala. Rep. 364.

When the only exception to a report is directed to a particular portion of it, which includes several distinct items or matters; and the exception does not point to any one of them in particular, but is leveled at all of them in mass, it may be overruled, unless the report appears to be wrong as to every one of them.—Royall v. McKenzie, *supra;* 2 Daniel's Ch. Pr. 1496, and notes.

Conceding that the chancellor may allow an exception in part, and that he may direct the master to review his report upon grounds independent of those laid in the exception; (2 Daniel's Ch. Pr. 1496, 1501; Hoare v. Johnston, 4 M. & C. 127;) yet he is not *bound* to sustain an exception in part, which is bad in part. He commits no error in overruling such exception *in toto*, and confirming the report, in the absence of any other exception.

It is unnecessary, in this case, to decide whether, where the partnership has continued for some length of time after the death of a partner, the survivor should be allowed any thing for his skill and personal services in continuing the business, or in winding up and settling it. However that may be, we consider it clear that, where a trading partnership and its business continued for a considerable length of time after the death of a partner, and his representatives elected to have a report and decree for the profits which accrued during that time, the surviving partner is entitled, at least, to an allowance and deduction for " tavern bills", and " *other expenses* incurred" " in the adjustment and settling up" of the affairs of the partnership.—Collyer on Partnership, §§ 199, 327, 328, and note 1:

As there is nothing in the record which contradicts either the responsive statements of Brady's answer hereinabove set forth, or the report of the master, they must be taken as true; and taking them as true, the master was authorized, from what appears in them, under the pleadings, to allow to Brady at least a part of his said charge of $3,500—to-wit, *the expenses* incurred by him in adjusting and settling up the partnership affairs.

Whether any other part of the charge of $3,500 could properly have been allowed, it is not material to inquire; for, as the exception of complainant was leveled at that charge

as a whole, and is clearly bad as to part of it, the chancellor was authorized to treat it as bad *in toto*, and to confirm the report,—that being the only exception to it.

The decree is affirmed, at the costs of the appellant.

