REESE *vs.* KIRK.

[BILL IN EQUITY BY VENDOR FOR REFORMATION OF TITLE-BOND.]

1. *Purchaser's remedy for defect of title.*—The purchaser may elect, on discovering a defect of title, either to take the necessary steps to entitle himself to a rescission of the contract, or to sue at law for a breach of the covenant contained in the bond for title.

2. *How election may be waived or lost.*—The purchaser's right of election, in such case, can only be lost by his own act or laches, and cannot be exercised by

any court for him; nor does he deprive himself of it by bringing suit on the title-bond, in which the lands are by mistake incorrectly described, and by defending a suit in equity for the correction of the mistake.

3. *Form of decrees in equity.*—The prescribed forms of proceeding in equity are flexible, and may be suited to the different postures of the case: the court may so adjust its decrees, and vary, qualify, restrain or model the remedy, as to meet most (if not all) of the exigencies of the case, and to adjust the adverse claims, controlling equities, and substantial rights of all the parties.

4. *Decree for reformation of title-bond.*—Where the vendor filed a bill, asking a reformation of his title-bond in the description of the land, and an injunction against an action at law on the bond; and the proof showed that the land was misdescribed by mistake, and that the vendor did not have the title to the land which he intended to sell,—the mistake in the bond was corrected, but the action at law was not enjoined; and it was expressly declared by the decree, that the purchaser might, at his election, either proceed with his action at law, or dismiss it and institute proceedings for a rescission of the contract; and further, that if he elected to proceed with his action, it should be considered in all respects an action on the bond as reformed.

APPEAL from the Chancery Court of Chambers.

Heard before the Hon. JAMES B. CLARK. ·    ·

THIS bill was filed by William Kirk against James E. Reese, to reform a bond for titles to a tract of land, and to enjoin an action at law on the bond. The bond was executed by Kirk to Reese in October, 1853, and was conditioned that the vendor should make title to "the west half of section two, township seventeen, range twenty-three; also, one hundred and fifteen acres, being part of the west half of section thirty-five, township eighteen, range twenty-three; containing four hundred and thirty-five acres, more or less;" but the bill alleged that the land was misdescribed by mistake, and that the land really sold was, "the west half of section thirty-five, township eighteen, range twenty-three, and all of the west half of section two, township seventeen, range twenty-three, which lies on the north side of the Uphanbee creek, supposed to contain one hundred and fifteen acres, more or less." The land had been previously sold and conveyed to Kirk by one Williams, who had purchased from one Segrist. In the deed from Segrist to Williams, the land was described as "the west half of section two, township seventeen, range twenty-three; also, one hundred and fifteen acres of the west half of section

thirty-five, township eighteen, range twenty-three; containing in all four hundred and thirty-five acres, more or less"; and in the deed from Williams to Kirk, as "the west half of section two, township seventeen, range twenty-three; also, one hundred and fifteen acres of the west half of section thirty-five, township eighteen, range twenty-three; containing in all four hundred and thirty-five acres, more or less, all lying north of Uphanbee creek." The description in the title-bond of Kirk was copied by Reese from the deed of Williams. The defendant denied, in his answer, that there was any mistake in the description of the land; alleging that he bought with reference to the land conveyed by Williams to Kirk, that he had no other knowledge of the numbers of the land, and that Kirk had no title to any other land than that described in the bond.

The chancellor held, on final hearing, that the evidence was sufficient to prove the alleged mistake; and he therefore rendered a decree, reforming the bond, but dissolving the injunction, and allowing the defendant to proceed with his action at law. From this decree the defendant now appeals, and here assigns it as error.

JOHN A. ELMORE and L. E. PARSONS for the appellant.— Mistake, as contra-distinguished from accident, is some unintentional act, omission, or error, arising from ignorance, surprise, imposition, or misplaced confidence. To authorize the reformation of a contract on the ground of mistake, the instrument must contain what the parties did not intend, or omit something which they did intend.—1 Story's Equity, §§ 110, 115; Hunt v. Rousmaniere, 8 Wheaton, 174; same case, 1 Peters, 1; Larkins v. Biddle, 21 Ala. 252; Trapp v. Moore, 21 Ala. 693. The mistake must be mutual; that is, the intention to insert what was omitted, or to omit what was inserted, must exist on both sides, or no reformation can be made; and although relief is sometimes granted against a contract on account of a mistake of one party only, yet these are cases in which the parties occupy some fiduciary relation to each other, and even in such cases no reformation is decreed.—1 Story's Equity, §§ 142–151.

Reese occupied no fiduciary relation to Kirk, nor was any

confidence reposed in him by Kirk, nor was Kirk mislead by him; but, on the contrary, Reese reposed confidence in Kirk, and from the very nature of the contract the parties were dealing at arm's length. There was no mistake on the part of either: Kirk intended to sell, and Reese intended to buy, the lands described in the bond. The *gravamen* of the bill is, that the parties contracted for the sale of Kirk's interest in the two half-sections, and that this interest is not correctly described in the bond; while the proof shows that the only interest which Kirk had in the land is correctly described in the bond, and that he has no title to the tract which he alleges he intended to sell.

BROCK & PRESLEY, *contra*, contended that the evidence established the alleged mistake in the description of the land intended to be sold, and that Kirk's want of title to a portion of that land was no obstacle to a reformation of his title-bond, since he would be liable on the bond.

RICE, C. J.—The evidence shows that, by mistake, the bond for titles executed by the complainant to the respondent did not truly describe the tract of land really sold by the former to the latter. But the evidence also tends, very strongly, to show that neither the complainant, nor his vendor, had such title to said tract as the complainant by his bond covenanted to make to the respondent; that probably he will not be able, within any reasonable time, if ever, to procure or to make such title; and that neither he, nor the respondent, knew of that defect of title at the time the contract was made.

If the tract really sold had been truly described in the bond, the respondent, upon discovering the defect of title, would have had the election, to take the necessary steps to entitle himself to a rescission of the contract, or to sue at law for a breach of the covenant contained in the bond.—Younge v. Harris, 2 Ala. Rep. 108; Greenlee v. Gaines, 13 Ala. R. 198; Lanier v. Hill, 25 Ala. R. 554; Munroe v. Pritchett, 16 Ala. R. 785; Foster v. Gressett, at the present term; Hitchcock v. Giddings, 4 Price, 135; Garret v. Yoe, 17 Ala. R. 74; Allen v. Greene, 19 Ala. Rep. 34. And from the evi-

27

dence before us, we are not authorized to say that, if the bond had truly described the tract really sold, he would not have elected to proceed for a rescission, rather than for damages for a breach of the covenant contained in the bond.

He has not deprived himself of that election, as to the tract really sold to him, by bringing the suit at law upon the bond as executed to him; because the tract described in it, although embracing part of that tract, was, as a tract, different from that really sold; and because the exercise of the election as to one tract is not the exercise of the election as to a different tract. Nor has he deprived himself of that election, by defending the present suit, in which his vendor seeks a correction of the mistake in the bond as to the description of the tract really sold. The right to exercise that election belongs to him until lost by his own act, or laches, and cannot be exercised by any court for him.

It is laid down in the elementary works on equity jurisprudence, that "there are many cases in which a simple judgment for either party, without qualifications, or conditions, or peculiar arrangements, will not do entire justice *ex æquo et bono* to either party. Some *modifications of the rights of both parties* may be required; *some restraints on one side;* some adjustments involving reciprocal obligations, or duties; some compensatory, or preliminary, or concurrent proceedings, to fix, control, or *equalize rights*; some qualifications or conditions, present *or future*, temporary or permanent, *to be annexed to the exercise of rights, or the redress of injuries.* In all these cases, courts of common law cannot give relief. They have no forms of remedy adapted to the objects." * * * "But courts of equity are not so restrained. Although they have prescribed forms of proceeding, the latter are *flexible, and may be suited to the different postures of the case.* They may adjust their decrees, so as to meet most, if not all, of these exigencies; and *they may vary, qualify, restrain, and model the remedy,* so as to suit it to mutual and adverse claims, controlling equities, and the real and substantial rights of all the parties." * * * "One of the most striking and distinctive features of courts of equity is, that they can adapt their decrees to all the varieties of circumstances which may arise, and adjust them to all the peculiar rights of all the parties in interest."

1 Story's Eq. Jur. §§ 27, 28.   Mitford on Pl. 3, 4; 1 Woodes. Lect. VIII, pp. 203 to 206.

Under the evidence in this case, and the principles above stated, the decree should have corrected the mistake in the bond, and have dissolved the injunction, and have expressly declared that the respondent may, at his election, proceed with his action at law, or dismiss that action and proceed for a rescission of the contract.   The decree should also have declared, that if the respondent elected to proceed with his action at law, the complainant should consent that the complaint in that action should be so amended as to make it a complaint on the bond as corrected by the decree in this suit, and that for all the purposes of that action, the correction of the bond should be deemed and taken as having been made on the day the original bond was executed.   The error of the decree rendered by the chancellor consists in this, that it does not properly protect the respondent's aforesaid right of election.   That decree merely declares that the respondent is "allowed to proceed with his action at law," but is entirely silent as to his right to elect to dismiss that action and proceed for a rescission of the contract; and it fails to make the proper requisitions of the complainant, in the event the respondent elects to proceed with his action at law.   That decree is affirmed, so far as it corrects the mistake in the bond, and imposes the costs of the court below on the respondent, and dissolves the injunction; but in all other respects it is reversed, and in the particulars in which it is thus reversed, it is here corrected so as to make the decree as a whole conformable to the views above expressed by us.   The appellee must pay the costs of this court.