Henderson, Adm'r, v. Huey et al.

---

## HENDERSON, Adm'r, vs. HUEY et al.

[BILL IN EQUITY BY SURETIES OF ADMINISTRATRIX, WHO WAS PRINCIPAL LEGATEE OF THE ESTATE, AND WHO HAD CONVEYED HER INTEREST THEREIN TO SECURE HER SECURITIES ON HER ADMINISTRATION BOND, TO ENJOIN JUDGMENT AT LAW, RENDERED AGAINST HER SURETIES, IN FAVOR OF ADMINISTRATOR WITH THE WILL ANNEXED, WHO, WITH NOTICE OF SUCH CONVEYANCE, AND WITHOUT THE CONSENT OF THE SURETIES, HAD PAID OUT TO FORMER ADMINISTRATRIX HER SHARE OF SUCH ESTATE, AMOUNTING TO MORE THAN THE AMOUNT OF JUDGMENT AGAINST SURETIES.]

1. *Administrator with the will annexed, judgment in favor of, against sureties of administratrix-in-chief; when equity will enjoin.* — H., by his will, made his wife his principal legatee, and after his death, she, for a time, administered his estate, but not until it was finally settled. On her resignation, H., as administrator *de bonis non*, with the will annexed, was appointed to succeed her, and on her final settlement of her administration, a judgment was rendered against her in the probate court fo

$5,924. To secure the payment of this judgment, she conveyed her estate in the hands of the administrator *de bonis non* to a trustee, for the benefit of her securities, of which the administrator *de bonis non* had due notice,—*Held*, that if the administrator *de bonis non* paid out the funds thus in his hands to the widow, without the consent of the sureties, to the extent of the amount thus paid out, the judgment would be' discharged against the sureties ; and if the amount thus paid out was' sufficient to discharge the whole of the decree, equity would interpose' to release the sureties from further payment of the judgment.

2. *Reference, order of ; to what confines master or register.*—The order of the court, referring a matter for inquiry and ascertainment to the register, confines the register to the terms of the order, and he cannot examine into matters outside the order thus made.

3. *Application for rehearing ; what questions will not be considered on.* Questions not raised on the original hearing will not generally be considered on application for rehearing.

APPEAL from Chancery Court of Talladega. Heard before Hon. B. B. McCRAW.

The opinion contains the facts material to an understanding of the questions decided.

BISHOP & HENDERSON, for appellant.
GEO. S. WALDEN and A. W. BOWIE, *contra*.

[The briefs did not come into Reporter's hands.]

PETERS, J.—This is a bill filed by George Elrod and James G. L. Huey, to restrain the administrator *de bonis non*, with the will annexed, of the estate of Edward Huey, deceased, from enforcing the collection of a decree rendered in the probate court of Talladega county, in favor of said administrator against the administratrix-in-chief of said estate and her sureties, for the sum of $5,924, upon the grounds that the said administratrix was the principal legatee of said estate, and that she had conveyed to a trustee her interest therein, in favor of her said sureties, a part of whom are the complainants, for the satisfaction of said decree ; which interest abovesaid was in possession of said administrator. The judgment of the probate court was enjoined, and the injunction was made perpetual. From this decree of the chancellor Henderson appeals to this court.

The complainants are the only living and solvent sureties of said administratrix now left. The bill alleges that the administrator had paid out to the administratrix of the funds so mortgaged, about eight thousand dollars, without interest thereon; and said payments had been made without their consent and in fraud of their rights, and after the execution and record of said conveyance for their indemnity.

The bill was demurred to by the administrator, and four several grounds of demurrer were assigned. 1st. There is no equity in the bill. 2d. The complainants do not propose to pay the amount due on the decree sought to be enjoined. 3d. That the bill does not show that the payments made to the administratrix were made without the *knowledge* and consent of complainants. 4th. That the bill does not show that complainants or their trustee in the deed ever notified the administrator not to pay the administratrix money. This demurrer was overruled by the court below, and the error assigned upon it must first be disposed of, before considering the merits of the case.

In the case of *Perrine v. Fireman's Insurance Company*, it is laid down as a well established principle, that, "where a creditor has the means of satisfaction in his hands, and chooses not to retain it, but suffers it to pass into the hands of the principal, the surety to that extent will be discharged.—22 Ala. 585. But there must be, in such case, some lien or some right to hold such means and apply them in satisfaction of the principal's liability. A principle almost identical with this had been previously maintained and affirmed in the case of *Allen, Adm'r, v. Greene,* 19 Ala. 34. There, Chilton sold a tract of land to Bruton on a credit, and gave bond for title in the penalty of four thousand dollars, upon condition if a sufficient title in fee simple was made to Bruton, then the bond to be void. Greene was the surety of Chilton on this bond. Bruton died before making any payment of the purchase money, and, after his death, Allen as his administrator brought suit at law on the bond against the surety, and alleged a failure to make title as a breach of the bond. There was no title in Chilton when he sold the land, but he bound him-

self to get title and make a sufficient conveyance to Bru-
ton.   At the time of the sale Chilton was in possession of
considerable  property, but  afterwards and before suit on
the bond he became insolvent.   Greene set up as his de-
fence, that shortly after the execution of the bond he in-
formed Bruton, who had gone into possession of the land,
that Chilton had no title to the  same, and  that he might
not be able to procure a title ; and notified Bruton not to
pay the purchase-money, unless he paid it at his own risk.
In this case, the court laid it down as a principle, that the
administrator might maintain  a  suit at law  on the bond
upon  breach  of the condition.   " And if the obligee had
not violated the contract on  his  part, the non-payment of
the purchase-money would go in reduction of the damages,
not in *discharge of  the  action*."—19  Ala. 42.   Besides this,
the contract of suretyship requires, as one of its legal inci-
dents, entire good faith and confidence between the parties
in regard to the whole transaction.   The creditor is bound
not to do any act injurious  to  the  surety, or  inconsistent
with his rights.   He is likewise  bound not to omit to  do
any act, when required by the surety, which his duty en-
joins him to do, and which, if omitted, would prove injuri-
ous to the surety,  `If he does, the surety is discharged to
the extent of the injury.   This is the case, " at all  events
in equity."—1 Story Eq. §§ 324, 325, 326.

These  principles, applied  to  this  case, show  that the
chancellor did not err in refusing to  sustain  the demurrer
for want of equity.

The second ground of demurrer is not well taken.   The
bill does not show that there would be any balance due on
the decree, after the funds in the hands of the administra-
tor were applied to  its satisfaction.   The  decree was for
something less than  six  thousand dollars ; the funds re-
ceived for its payment were above eight  thousand dollars.
This was equivalent to an allegation that there  was noth-
ing to be paid on the  decree after applying the funds se-
cured by the mortgage, which  were in  the  hands of the
administrator *de bonis non*.

The third ground  of demurrer is not sustained by the
record.   It is alleged that the payments to the administra-

tor were made "without the consent" of the sureties. This wa enough; it was not necessary to allege that they were made without their knowledge.

The fourth objection raised by the demurrer is also ill taken. The deed devoting the funds in the hands of the administrator *de bonis non* to the satisfaction of the decree, was properly executed and recorded. This was notice to all the world of its purpose and its contents.—Rev. Code, § 1543. Such notice was enough to show that the property conveyed in it could not be paid to the administratrix without a violation of the trust. The deed was made for the indemnity of the sureties, and this forbid such a payment as was made and complained of in the bill, without a reservation of a sufficiency to satisfy the debt intended in the mortgage to be secured. The funds having been placed in the administrator's hand for the payment of the debt secured, it was, *pro tanto*, a payment of the debt, unless the funds were lost or destroyed without his fault, before they could be converted into money and applied, as required by the deed. The administrator *de bonis non* was the creditor, and as such he was entitled to hold on to the funds deposited in his hands for the payment of his debt, and it was his duty to do so. The trust was created for the better security of the debt, and attached to it.—*Ohio Life Insurance and Trust Co. v. Ledyard*, 8 Ala. 866; *Feagan et al., Adm'rs, v. Kendall*, 43 Ala. 628. This disposes of the demurrer, as well as the motion to dismiss for want of equity.—*Calhoun v. Powell*, 42 Ala. 645.

The decree of the probate court was rendered in 1858. It was in favor of Henderson, as the administrator *de bonis non*, against Mrs. Simmons, as the administratrix-in-chief of the same estate, upon her final settlement. The deed to indemnify her sureties by subjecting her interest in her deceased husband's estate to this purpose, was executed and recorded in 1856. The conveyance by herself and husband to Knox, as her trustee for this purpose, was a valid deed. Her first husband died in 1852; she derived her title from his will, and it is an absolute and unconditional title, and the will directs that she shall take possession immediately after the testator's death. Under the act of 1850, this

property became her statutory separate estate. The conveyance here is made in conformity with that act, and also with the provisions of the Code. It was made by the husband and wife jointly, and attested by two witnesses. This was sufficient.—*Warfield v. Ravesies and Wife*, 38 Ala. 518, 524. The wife is not only authorized to pay her own debts contracted before her marriage, but she is bound to do this out of her statutory separate estate.—Rev. Code, § 2370. Then, if she can pay, she can certainly mortgage or convey to secure a payment of such debt. The authority to pay the debt is the greater; the mortgage is the less; and the greater includes the less where both are not mentioned. *Majus dignum trahit ad se minus dignum.*—2 Kent, 618; Coke Litt. 43, 355*b*.

Thus, it appears that upon authority of the principles settled in the above mentioned cases, that the administrator *de bonis non* was bound in good faith to apply the funds in his hands, placed there by Mrs. Simmons for the indemnity of her sureties, to their discharge; unless they consented that these funds might be otherwise disposed of. If the sureties consented that the administrator might be at liberty to make payments to Mrs. Simmons, after the execution of the deed, out of the means conveyed by the deed, they have no right to complain. In such a case, they may waive their rights by consent. *Consensus facit legem.* Branch Princ.; *Woters v. Creah, Ex'r*, 4 S. & P. 410; S. C, 3 Smith Cond. Rep. 269. But the *ninth* paragraph of the bill alleges that the amount of Mrs. Simmons' legacy, which came into the administrator's possession and control, was largely in excess of the amount of the decree against her and her sureties, after deducting all sums legally paid out on account of debts due from testator, and the expenses incurred in the prudent administration of said estate. It is also alleged that the payments to Mrs. Simmons were about eight thousand dollars, which were made without the consent of the sureties, who were the beneficiaries in the deed and these complaints. These charges are positively and directly made. They are not met by a direct denial, nor by such explanations as amount to a denial. But it is denied that these payments were made with-

out the consent of the sureties. The proofs, though very contradictory, I think fail to sustain the answer in this last particular. And I can not say that the chancellor erred in refusing to be influenced by the evidence of consent on the part of the sureties to the payments to Mrs. Simmons. The bill does not give the date of Henderson's appointment; but it charges that he was appointed immediately after the will was admitted to probate. And the date of the probate of the will is left blank in the bill. But in Henderson's answer to this allegation of the bill, he admits that he was appointed in 1855. He was administrator then, before and after the deed for the indemnity of the sureties was executed and recorded. And he indorsed thereon, " I have seen and had notice of this deed. July 30th, 1856. John Henderson." From the date of his appointment Henderson continued administrator *de bonis non*, with the will annexed, of Henry's estate, until the filing of the bill; and the deed was sufficient notice to him not to pay to Mrs. Simmons. The final settlement of Mrs. Simmons was made in 1858. This showed the amount of her *devastavit* as administratrix-in-chief; but it did not show the amount or value of her property or assets which went into the hands of Henderson, as her successor. This was not shown by any allegation of the bill or admission in the answers. It was, then, proper to refer this matter to the master for inquiry and ascertainment. It was also proper to know the amount due upon the decree, as it could only be discharged to the amount of the means supplied for the purpose.—19 Ala. 42, *supra*. The interlocutory decree of the chancellor was in conformity with these principles, the issues raised in the pleadings, and the evidence submitted at the hearing. It is, therefore, without error.

It now only remains to notice the exceptions to the report of the register, which were overruled against the respondent Henderson's objections. There were four of these. The decree upon the merits on final hearing necessarily closes all questions save those referred to the master for further inquiry. Hence, no new questions outside the instructions given in the order of reference can be raised on the hearing before the master.

The direction to the master was in these words : "It is further ordered, that a reference be had to the register of this court, to ascertain and state the amount due the respondent, John Henderson, from his co-respondent, Angeline Simmons, on the decree of said probate court, by the complainants in and by their bill of complaint sought to be enjoined ; and also, the amount of the several advancements out of the estate of said Edward Huey, deceased made by respondent, John Henderson, to his co-respondent, Angeline Simmons, *specified* in exhibits D and E attached to complainant's bill, and report whether any, and what difference, between the amount of the advancements so made to said Angeline Simmons, (including interest from the date of said advancements,) and the amount due the said respondent, John Henderson, as administrator as aforesaid, against the said Angeline Simmons, as his successor in office as administrator aforesaid, and the complainants as her sureties on her administration bond, as shown by the probate court decree prayed to be enjoined in this case, including interest on said decree. And upon said reference the register will, in connection with the testimony already submitted in this case, receive and consider any legal evidence, oral or written, which may be offered by the parties."

This order confines the inquiry of the register to the ascertainment of the amount of the decree mentioned, and the amount of the payments specified in exhibits D and E. Under this order, any payments made upon the decree might be shown and allowed, or any mistakes of calculation in the items specified in exhibits D and E might be corrected. Beyond this the register could not go. But for these purposes he could hear any legal testimony that might be offered by either party.—*Lang v. Brown*, 21 Ala. 179 ; *Royall's Adm'r v. McKinzie*, 25 Ala. 363. Under this reference, the respondent, Henderson, proposed to offer in evidence the record of a partial settlement of Henderson as administrator *de bonis non* with the will annexed of the estate of said Edward Huey, deceased, made in the probate court of Talladega county, on the 11th day of June, 1861, and prove by oral evidence at the same time, in con-

nection with such record, " that the accounts and vouchers, including the receipts of Mrs. Simmons, were, on the motion of Elrod, one of the complainants, scaled and reduced to a currency basis." The oral portion of this testimony was wholly irrelevant to the issue before the register. And a part of the evidence offered being inadmissible, the whole was properly rejected.—*Brantley v. Gunn*, 29 Ala. 387.

The second exception is founded on a refusal of the master to admit evidence on the hearing before him to show that a portion of the receipts of Mrs. Simmons, in one of said exhibits, were given for Confederate money, and to have them scaled and reduced to a currency value under the proof. This would have been a departure from the decree and order of the chancellor. Besides, it is not pretended that Henderson did not use such funds as money. If he did, he ought to account for it as money. He had no authority, under the pleadings in this case, to convert Mrs. Simmons' legacy, or the assets of the estate of Huey, into such funds.—*Hall v. Hall*, 43 Ala. 488 ; *Houston v. Deloach*, 43 Ala. 364. This also includes the fourth exception, as it rests on a like objection.

The third exception is in these words : " The register ought to have received proof offered that respondent, Henderson, had paid to Mrs. Simmons three thousand dollars out of his own means beyond her interest in Huey's estate, and that no assets had ever come to his hands out of which to reimburse him." It is not perceived how this exception could arise out of the proceedings before the register. There is no allegation in the bill, or in Henderson's answer, which made it a part of the case before the chancellor. It is wholly new matter, outside of the pleading made in the record. I know of no authority or principle of chancery practice which would let it in, in this way. Henderson was not entitled to any reimbursements out of Mrs. Simmons' legacy in his hands, until the liability of the sureties was discharged ; because her whole interest had been incumbered for their indemnity by the deed to Knox. Besides this, the exception is not single and definite. It is made to rest upon the double facts that

the administrator paid with his own funds, and is therefore entitled to the benefit of a diminution of payments to Mrs. Simmons to that amount; or, that he has paid with his own funds, and is therefore entitled to a like diminution as a reimbursement out of her legacy. In the former case, under a proper state of pleadings, he might be entitled to such a diminution; but in the latter case he would not. And as his pleading must be taken most strongly against him, his exception is not entitled to prevail.—*Alexander v. Alexander*, 8 Ala. 790; *Burns v. Hamilton's Adm'r*, 33 Ala. 210; *Lucas v. Oliver*, 34 Ala. 626; *Duckworth v. Duckworth's Ex'r*, 35 Ala. 70; *O'Reilly's Adm'r v. Brady*, 28 Ala. 530; Steph. Plead. 415.

The decree of the chancellor in the court below is in all things affirmed, at the cost of appellant, Henderson, in this court and in the court below.

[NOTE BY REPORTER.—After the delivery of the foregoing opinion, the appellant petitioned for a rehearing. The petition did not come into the hands of the Reporter, who is therefore unable to state the grounds upon which it was based. The following response was made thereto:]

PETERS, J.—A rehearing is not a new trial. For this reason, the court will not consider questions not made on the original hearing. The only questions raised on the assignments of error were as follows: 1. The equity of the bill; 2. The interlocutory order of reference to the master; 3. The exceptions to the master's report; and 4. The final decree of the chancellor. No errors outside of these will be noticed on such an application as this.—*Long v. Rodgers*, 19 Ala. 321; *McGill v. Monette*, 38 Ala. 49. From the decision on the questions thus raised the court is not willing to depart.

The rehearing is therefore denied, with costs.