# Florence Sewing Machine Co. *v.* Zeigler *et al.*

*Bill in Equity to set aside Conveyances as Fraudulent.*

1. *Sale; what necessary to avoid as fraudulent.*—To avoid a sale, when made on an adequate new consideration, on the ground that it was made with intent to hinder, delay and defraud creditors, the attacking creditors must show that the vendor made the sale with that intent, and that the purchaser participated in it, or had knowledge of some fact calculated to put him on inquiry, and thus charge him with notice.

2. *Bona fide purchaser; what necessary to constitute.*—To constitute the defense of a *bona fide* purchaser without notice, the purchaser must have paid the purchase-money in full, before notice of the fraud of the vendor; and any

[Florence Sewing Machine Co. v. Zeigler.]

payment made by him after notice is in his own wrong; but, as to partial payments, made before notice, he acquires an equity *pro tanto*.    Whether the rule applies to sales of personal property, is not decided.

3.    *Prayer for general relief ; what relief will not be granted under.*—Where the original bill sought to set aside a sale of personal property and choses in action, on the ground that it was fraudulent as against creditors, and also asked the appointment of a receiver to take charge of the property and collect the debts, the business acquired by the purchaser being broken up by the appointment of a receiver, and the complainant failing to establish any participation on the part of the purchaser in the fraud of the vendor, the court will not, under the general prayer for relief, require the purchaser to pay over to the complainant the unpaid portion of the purchase-money.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. H. AUSTILL.

This was a bill filed by the appellants, The Florence Sewing Machine Company against the appellee, N. A. Zeigler, Charles L. Cherry, and William Miller, as the administrator of one Revault, a former partner of respondent, Zeigler; and sought to set aside, as fraudulent, a conveyance of certain personal property, made by Zeigler, as surviving partner to Cherry.    The bill alleged that, under an agreement for the sale of their sewing machines, the appellants had furnished to N. A. Zeigler & Co. a large amount of goods, consisting chiefly of Florence Sewing Machines, and their attachments, which had never been paid for by them; that the defendant, Zeigler, as surviving partner, had, on or about the 30th day of April, 1873, with intent to hinder, delay, and defraud the appellants, sold all the property of the firm of Zeigler & Co. to one Charles L. Cherry, who was a son of Zeigler's wife, taking therefor the notes of Cherry, none of which were due when the bill was filed.    The bill further alleged, that Cherry knew of and participated in the fraud thus practiced; that he was a young man without means, and unable to respond in damages to appellant; and that he was selling and disposing of the property thus acquired, to their injury.

The bill further alleged that Zeigler, at the same time, and for the same consideration, had turned over to Cherry all the notes and accounts of every description which had belonged to Zeigler & Co. ; that the notes and accounts had been given by various parties to Zeigler & Co. for the purchase and hire of Florence Sewing Machines, and prayed that a receiver be appointed to take charge of the stock, and collect the notes and accounts, and hold the proceeds subject to the order of the court.    The bill further prayed a discovery of Zeigler and Cherry ; that Cherry be compelled to account to appellants for the property received by him; that the sale to Cherry be declared fraudulent and void as to appellants, and for general relief.    In obedience to the foot note, both Zeig-

ler and Cherry filed sworn answers, in which all fraud was denied; and Cherry positively denied any intent to delay, hinder, or defraud the appellant, or any knowledge at the time of the purchase by him, that Zeigler & Co., or Zeigler, were indebted to appellant, and averred that the purchase was made by him in good faith for the purpose of changing his employment, which had been that of a river pilot, and which kept him away from home nearly all the time, for one which he could be more at home with his family, which consisted of a wife, who was an invalid, and one small child. He admitted that, at the time he made the purchase, he had no property beyond his exemptions. He also averred that since he became aware of the indebtedness of Zeigler & Co. to appellant, he had offered first to Zeigler to rescind said contract, and restore to him the property upon the surrender of the notes given by him, which Zeigler had refused to do; that he then proposed to one Hale, the president of appellant, that if the company would surrender to him his notes, and allow him a reasonable compensation for his services while he held the property, that he would surrender it, and account to him for all money and property received by him, which offer was likewise refused. The Chancellor, pending the trial of the cause, appointed a receiver, who took possession of the property. The evidence showed that Cherry was an honest, energetic man, of good habits, and both his former employer, A. C. Donner, and his family physician, testified to his having expressed a desire and intention to change his employment for one which would permit him to be more at home, before he made the purchase.

One Anderson testified that Cherry had told him since he had taken charge of the business of Zeigler & Co., that he did so to secure the interest of his uncle, who had in his life time been a partner of Zeigler's, and to whom the partnership was largely indebted. Pending the trial, the owners of a store which had been occupied by Zeigler & Co., Cherry, and the receiver, at different times, filed a petition, praying that the receiver be directed to pay the rent then due, which petition the Chancellor granted. On the hearing, the Chancellor dismissed the bill as to Cherry on the ground that the evidence failed to establish any fraud on his part, ordered the receiver to pay the money in his hands into court, and to turn over to Cherry all notes, accounts, and property in his hands, and to settle his accounts as such receiver.

This decree is now assigned as error.

L. Gibbons, P. & T. A. Hamilton, for appellant.

Manning & Walker, contra.

[Florence Sewing Machine Co. v. Zeigler.]

STONE, J.—In *Crawford v. Kirksey*, 55 Ala. 282, we said, to avoid a sale made upon adequate new consideration—that is, not in payment of a debt—on the alleged ground that it was made with intent to delay, hinder, and defraud creditors—the creditor attacking the sale must show two things : first, that the vendor made the sale with such intent; and, second, that the purchaser participated in such intent, or knew of its existence, or had knowledge of some fact calculated to put him on inquiry, and which, if followed up, would have led to the discovery that the vendor's intent was fraudulent. We cited authorities in support of this proposition.

We have considered the pleadings and evidence in this cause with great care, and are not convinced that the Chancellor erred in refusing to set aside, as fraudulent, the sale of Zeigler to Cherry. Sworn answers were required from them, and each of them denies, very fully, that Cherry was informed that Zeigler was indebted to the sewing machine company. One fact, apparent in the record, is strongly corroborative of this. Cherry was entering on a business which, to be successful, would require a continued supply of merchandise from the complainant. Succeeding to the business of Zeigler, he could not have expected to keep up trade with the sewing machine company, if he had known or suspected Zeigler was largely indebted, and in default to them.

The testimony of Cherry very fully sustains these denials in the answers, and explains why he wished to enter on a business, which would permit him to remain more at home. Dr. Gaines justifies him in this. We find nothing in his testimony, which, *per se*, causes us to distrust it. The testimony of Anderson is not enough to overcome it. Admissions and conversations are easily misconstrued; and the remark proved by him, if made by Cherry, is scarcely potent and decisive enough to fix the charge of fraudulent participation on Cherry. Hence, we find no error in the ruling of the chancellor on the main question in the cause. .

There is a rule as to real estate, that to constitute a good defense of *bona fide* purchase without notice, the purchaser must have paid in full before notice of the fraud of the vendor. And if, after purchase, and before making full payment, the purchaser receives such notice, any payment afterwards made by him will be in his own wrong. But he does not thereby forfeit the money he has paid. The effect is, to render him liable to account to the creditor, attacking the conveyance, for any unpaid balance of the purchase-money; and, in some cases perhaps, to compel a surrender of the property, upon being indemnified for prior payments and im-

provements.—2 Sto. Eq. Ju. §§ 1502 to 1505, and notes. We do not sanction the extreme doctrine that a purchaser, no matter how innocent he may be, acquires no rights against a latent equity until he pays in full and receives a conveyance. We hold that he acquires an equity *pro tanto* to the extent he pays before notice.—See Sto. Eq. Ju. § 1503*b*, note 2; *Yourt v. Martin*, 3 Serg. & R. 423; *Lewis v. Bradford*, 10 Watts, 67; *Bellas v. McCarthy, Ib.* 13; *Juvenal v. Jackson*, 2 Harris, 519; *Ulrich v. Beck*, 1 Harris, 639; *Beck v. Ulrich*, 4 Harris, 499; *Paul v. Fulton*, 25 Mo. 156; *Boggs v. Varner*, 6 W. & S. 469; *Farmers' Loan Co. v. Maltby*, 8 Paige. 361; *Frost v. Beekman*, 1 Johns. Ch. 288; *Everts v. Agnes*, 4 Wis. 343.

We need not inquire whether the same rule applies to the personalty, for under the averments and special prayer in this case, we consider such inquiry unnecessary.

The original bill charges that the sale from Zeigler to Cherry was made with intent to delay, hinder, and defraud complainant, and it prayed and obtained the appointment of a receiver, who took charge of the effects. This necessarily broke up and destroyed the adventure in the hands of Cherry. To hold him accountable for the unpaid purchase-money to the creditors of Zeigler, on account of the alleged fraud of the latter, would be to compel him to pay for that which the wrongful act of complainant has prevented him from enjoying. This relief would be incompatible with that specially prayed, and partially obtained; and, on this account, it would be oppressive and unjust to grant such relief under the general prayer.—*Reese v. Kirk*, 29 Ala. 406; 1 Brick. Dig. 704, § 938.

Having ascertained that the complainant is not entitled to relief, and that the chancellor rightly ruled against him, we need not and will not inquire into the ruling as to rents. In that question the appellant has no interest.

Decree of the chancery court affirmed.

In the affirmance of this decree, we do not intend to preclude the chancellor from proceeding to settle the accounts of the receiver appointed in this cause, nor from disposing of the fund thus brought into the custody of that court.

MANNING, J., not sitting, having been of counsel.