# Smith *v.* Collins & Griffith.

*Action on Sheriff's Official Bond, for Damages on account of Illegal Levy of Attachment.*

1. *Sale of goods by insolvent or embarrassed debtor; burden of proof in contest with creditor.*—When a sale of his stock of goods by a debtor who is insolvent, or financially embarrassed, is assailed on the ground of fraud by a creditor whose debt was then in existence, the *onus* is on the purchaser to prove the payment of a fair and adequate consideration; and when he has made this proof, the *onus* is shifted to the attacking creditor to show (1) a fraudulent intent on the part of the debtor, and (2) the purchaser's knowledge of that intent, or of facts sufficient to charge him with constructive notice of it, or to charge him with notice of the debtor's financial condition.

2. *Relationship of parties, as showing fraud; charge as to.*—Where the issue is as to the validity of a sale of goods by an insolvent debtor to a relative, a charge instructing the jury that no presumption of fraud is drawn from the fact of relationship, but the jury are the sole judges of the weight which shall be given to it, "asserts no incorrect proposition of law, and if deemed misleading, as falling short of the entire rule," should be limited by an explanatory charge.

3. *Fraudulent sale of goods by solvent debtor.*—A solvent debtor may make a fraudulent sale of his property, converting it into money for the express purpose of putting it beyond the reach of his creditors; and if the purchaser has knowledge of this fraudulent purpose, and pays a cash consideration, he is a participator in the fraud, and acquires no title as against creditors.

4. *Charge as to proof of fraud.*—The court may instruct the jury, in a case involving the validity of a sale of his goods by an insolvent

[Smith v. Collins & Griffith.]

debtor, that to establish fraud on the part of the purchaser, the party asserting it must show facts and circumstances, which not only cast a suspicion on the transaction, but are not fairly and reasonably reconcilable with fair dealing and honesty of purpose.

5. *When debtor is insolvent.*—When a debtor has property amenable to legal process, sufficient to satisfy all his liabilities, he can not be said to be insolvent, although he may not have money in hand sufficient to meet them as they mature.

6. Argumentative charges are properly refused.

7. *Charge on evidence.*—While it is entirely legitimate for counsel to group facts and press them with reasonable inference in argument upon the jury, it is altogether improper for the court to weigh the evidence and draw the inference for the jury.

8. *Subsequent use of purchase-money by debtor, as showing fraud.* The insolvent debtor being a partnership, and the greater part of the consideration being paid in cash, the fact that one of the partners used some of the money in defraying his family expenses, leaving partnership debts unpaid, does not affect the validity of the transaction, disconnected from any other facts implicating the purchasers in a fraudulent intent.

9. *Return of part of property to debtor, as showing fraud.*—A half dozen hogs being at first included in the sale, in addition to the stock of goods, but afterwards struck out by agreement, and the agreed price deducted from the purchase-money to be paid; this does not invalidate the sale as matter of law, but is matter for the consideration of the jury in connection with the evidence explaining it.

10. *Attachment as evidence of indebtedness.*—In trespass against a sheriff and his sureties, for levying an attachment on a stock of goods claimed by plaintiff under a prior purchase from the defendant in attachment, the writ of attachment can not be considered by the jury as evidence tending to show the indebtedness of the defendant in attachment; though the rule is different in a statutory claim suit instituted by the purchaser against the attaching creditors.

11. *Production of deposition in hands of commissioner.*—The Circuit Court has no power, by subpœna *duces tecum*, to compel a commissioner, appointed by the Chancery Court, to produce a deposition yet in his hands, or the exhibits thereto.

12. *Putting witnesses under rule.*—When the plaintiffs sue as partners, claiming a stock of goods under a purchase which is attacked as fraudulent, and the witnesses are put under the rule, the court may refuse to exclude each of them from the court room during the examination of the other.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by Collins & Griffith, a partnership composed of Robert A. Collins and B. K. Griffith, against J. S. Smith, the sheriff of the county, and the sureties on his official bond, and sought to recover damages for an alleged trespass, which consisted of the levy by the sheriff of sundry attachments against J. D. Collins & Co. on a stock of goods claimed by plaintiffs under a prior purchase from said defendants in attachment. The firm of J. D. Collins & Co. was composed of J. D. Collins and his father, J. A. Collins, who was also the father of Robert A. Collins, one of the plaintiffs in this suit. The attachments were levied on the goods, in the store-house

in which J. D. Collins & Co. had carried on business, on the evening of December 27, 1889; and the goods were removed by the sheriff, and afterwards sold under the attachments. The plaintiffs claimed to have purchased the goods on the 23d December, 1889, at the agreed price of $4,30ⁿ; and they introduced evidence tending to show that this was the reasonable value of the goods, and how the money was paid—that is, about $1,645 in cash, $1,010.40 in payment of a debt which J. D. Collins & Co. owed Robert A. Collins, the purchasers' notes for the balance, &c. The defendants justified under the attachments, and attacked the validity of the plaintiffs' purchase on the ground of fraud; and they introduced evidence tending to show that J. D. Collins & Co. were insolvent at the time of the sale, and that plaintiffs had knowledge of that fact, or were chargeable with constructive notice of it. Several exceptions were reserved by the defendants to rulings of the court on the admission of evidence bearing on these questions, and these rulings are here assigned as error, but they require no statement of facts in detail.

The defendants had served subpœnas *duces tecum* on J. W. Moore and D. D. Smith, requiring them to produce on the trial, for inspection and use by the defendants, the depositions of J. D. Collins and R. A. Collins, taken in another case, and the exhibits attached to said depositions, which were the partnership books of J. D. Collins & Co. The witnesses were present in court, but declined to produce the depositions or the books, unless required to do so by the court. Before entering on the trial, the defendants asked the court to require the witnesses to produce the depositions and the books, or show cause why they should not do so. The witnesses showed for cause that the depositions were taken by said Moore, under a commision i-sued out of the Chancery Court, in a cause therein pending between Stix, Krouse & Co., creditors of J. D. Collins & Co., and Mrs. Imogen Collins, the wife of said J. D. Collins, in which the creditors attacked the validity of a conveyance executed by said Collins to his wife on said 23d December, 1889; that the partnership books were made exhibits to the depositions; that the depositions had not been sealed up, nor returned into the Chancery Court, but were deposited by Moore in Smith's office until the court should determine the question as to their production. On these facts, the court refused to compel the production of the depositions and the books, or either of them, and the defendants excepted. The defendants then moved the court for a continuance of the cause, "so as to give them an opportunity to get the benefit of said testimony;" and they

excepted to the overruling and refusal of this motion. The witnesses were then called and sworn, and the plaintiffs being sworn as witnesses in their own behalf, "the defendants stated to the court that the issues involved the validity of the plaintiffs' purchase of the goods from said J. D. Collins & Co., and asked that each of them be excluded from the room during the examination of the other." The court overruled and refused this motion, and the defendants excepted.

The court gave an oral charge to the jury, which covers five pages of the transcript it type-writing, and instructed them, among other things, as follows: "To render void a conveyance made with the intent to hinder, delay or defraud creditors, it is necessary that bad intent must exist on the part of the purchaser as well as the seller. It is not sufficient that property be sold with the intent on the part of the seller to injure his creditors, but, in order to render it void, both parties to the conveyance must participate in the bad intent; so that a purchaser who, without any knowledge of the intent on the part of the seller, buys property and pays for it, or pays a part and gives his notes for the remainder, is protected: the sale can not be rendered void, even at the instance of creditors who may be prejudiced thereby." The defendants excepted to this part of the oral change, but to no other part of it; and they also excepted to each of the following charges, which were given by the court at the instance of the plaintiffs.

(1.) "The jury are the sole judges of what weight shall be given to the relationship of the parties in determining the question involved in the case; no presumption of fraud is drawn from relationship." (2.) "Unless J. D. Collins & Co. were insolvent at the time of the sale, and Collins & Griffith had notice thereof, the payment of the note signed by J. D. and J. A. Collins would not render the sale fraudulent." (3.) "All the assets belonging to the firm of J. D. Collins & Co. were liable to the payment of the firm debts, and, as against creditors of the firm, neither of the partners could claim any of the property as exempt from the payment of debts." (4.) "Insolvency means an insufficiency of assets to pay debts; and if the jury believe from the evidence that the assets of J. D. Collins and J. A. Collins, liable to the payment of their debts on the 23d and 24th of December, 1889, exceeded in value the amount of the claims against them, then they were not insolvent at that time." (5.) "Fraud must be proved, like any other fact, and evidence which merely shows a suspicion of its existence is not sufficient to establish it." (6.) "Before

[Smith v. Collins & Griffith.]

the jury can find that the plaintiffs were guilty of fraud in the purchase from J. D. Collins & Co., defendants must show facts and circumstances which not only cast a suspicion on the transaction, but they must show a state of facts which are not fairly and reasonably reconcilable with fair dealing and honesty of purpose; and until this is done, the jury can not find that plaintiffs were guilty of any fraud." (7.) "If the jury believe from the evidence that the plaintiffs, on or about December 23d, 1889, bought of J. D. Collins & Co. the stock of goods in controversy, and paid therefor the agreed price with cash, and by the transfer of a mortgage on one Self, and in the payment and satisfaction of *bona fide* indebtedness of J. D. and J. A. Collins and of J. D. Collins & C., and by a resale of the hogs described in the bill of sale, and by executing their notes for the balance; and if they further believe that the amount so paid in this way was the reasonable value of the goods, and that said Smith, as sheriff, by his deputy, afterwards seized and took possession of the goods under the writs of attachment in evidence; then the defendants are liable to the plaintiffs for the stock of goods so seized, unless the defendants have satisfied the jury by the evidence (1) that J. D. Collins & Co. were, at the time the purchase was made and closed, insolvent or in embarrassed circumstances, and (2) that plaintiffs at that time had knowledge of their insolvent or embarrassed condition. The burden of proving each of these last named facts is on the defendants, and the plaintiffs are entitled to a verdict unless they are proved."

The defendants also excepted to the refusal of each of the following charges, which they asked in writing:

1. "If the jury believe from the evidence that J. D. Collins & Co. were insolvent, or in a failing condition, and that Collins & Griffith knew this, or were in possession of facts sufficient to put them on inquiry as to the financial condition of J. D. Collins & Co., the burden of proof is on the plaintiffs to show that the purchase of the stock of goods from J. D. Collins & Co. was not only *bona fide*, but that they paid a valuable consideration for the goods; and the purchase price consisting, according to their claim, in part of debts due to Robert A. Collins, one of the purchasers, from said J. D. Collins & Co., the plaintiffs must establish the existence of such debt due to Robert Collins by clear and satisfactory evidence; and it being undisputed that near relationship exists between the purchasers and sellers. more vigilant and jealous scrutiny will be excited, and clearer and more convincing proof required, than if the transaction was between strangers."

2. "The jury should look to all the facts and circumstances

surrounding the transaction, in deciding upon the *bona fides* of the sale from J. D. Collins & Co. to Collins & Griffith. If the jury believe the trade was gotten up in haste; that the trade was consummated at night; that the mercantile firm of J. D. Collins & Co. ceased to exist by a sweeping sale of the entire merchandise, in the night-time; that there was a near relationship between one of the plaintiffs and the sellers; that the inventory was taken in the absence of the purchasers, and that the plaintiffs had never examined the stock of goods with a view of purchasing the same—these are facts to be considered by the jury, in connection with all the other evidence in the case, in determining whether or not inquiry into the financial condition of J. D. Collins & Co. should have been made. And if the jury find from the foregoing facts, viewed in the light of the other evidence in the case, that inquiry should have been made which, if fairly and honestly conducted, would have disclosed the existence of debts due from J. D. Collins & Co., and unprovided for; and if the jury further find that J. D. Collins & Co. were in failing circumstances at the time of the trade, and that the plaintiffs, knowing this fact, or having good reason to believe it, pai·t money to J. D. Collins & Co., and thereby enabled them to shuffle their property out of sight of creditors, the sale was void, and plaintiffs can not recover."

3. "If the jury believe from the evidence in this case that J. D. Collins & Co., at the time of the sale by them to Collins & Griffith, were unable to pay their debts in money in the ordinary course of trade, then they were insolvent."

4. "Partnership assets of a failing concern can not legally be applied to the debts and expenses of the individual members until the partnership debts have been provided for; and if the jury believe, at the time of the alleged sale of goods from J. D. Collins & Co. to Collins & Griffith, that the former was in failing circumstances, and they received money in part payment for said goods, and that without paying or providing for the partnership debts Julius A. Collins used a part of said money to defray his family expenses; then this was a fraud upon those creditors of J. D. Collins & Co. who were unpaid or unprovided for, if there were such creditors."

5. "If J. D. Collins & Co. were insolvent, or in an embarrassed financial condition, at the time of the sale to Collins & Griffith, and the said sale was made by them for the purpose of putting their property beyond the reach of their creditors, or was made to hinder, delay or defraud their creditors, which preference was to be exercised at their election after proceeds of sale had come into their hands; then the jury, in deter-

[Smith v. Collins & Griffith.]

mining whether Collins & Griffith, or either of them, had sufficient information to stimulate inquiry into the transaction and embarrassed financial condition of J. D. Collins & Co., they may consider the character, surroundings and relationship of the parties to the transaction, their intimacy, if any is shown, their connection with that particular transaction, and their facilities for obtaining correct information."

6. "If J. D. Collins & Co., at the time of the sale to Collins & Griffith, were insolvent, or in a failing condition, then, in determining if said sale was made with the intent of placing their property beyond the reach of creditors, or to hinder, delay or defraud their creditors, the jury are authorized to consider any unusual circumstances outside of the ordinary routine commercial or mercantile business, if such are shown to exist—such as great haste in consummating the sale, the unusual time, to-wit, night-time, the fact that the sale embraced the entire stock of goods, and the further fact that it would result in the firm of J. D. Collins & Co. going out of the commercial business, and also the fact that they conveyed their store-house and lot at the same time to Imogene Collins; and the jury may also consider these circumstances, if they exist, in determining whether or not said Collins & Griffith, or either of them, had knowledge of such fraudulent intent, or such purpose to place the property beyond the reach of creditors, or whether they had notice or knowledge of such facts as would stimulate inquiry on their part into the validity of the sale; and if such inquiry was excited, then it was not enough that said inquiry should have been directed simply to the sale, but they should have gone further, and made diligent and honest inquiry to ascertain the true financial condition of J. D. Collins & Co., and also to have gone further with the view of ascertaining the real intent on the part of J. D. Collins & Co. in making such sale."

7. "If J. D. Collins & Co. were unable at the time of the sale to Collins & Griffith to pay their debts in money as they fell due in the ordinary course of trade, then they were insolvent."

8. "The evidence in the case shows that J. D. Collins & Co. were insolvent at the time of the sale to Collins & Griffith."

9. "The evidence in the case shows that J. D. Collins & Co., at the time of the sale to Collins & Griffith, were in embarrassed financial circumstances."

10. "In considering the fairness and *bona fides* of the sale of J. D. Collins & Co. to Collins & Griffith, they may take into the consideration the fact that J. D. Collins of the firm of

[Smith v. Colllns & Griffith ]

J. D. Collins & Co. was not introduced by the plaintiffs as a witness in this case."

11. "If they believe the evidence in this case, they will find for the defendant."

12. "If they believe from the evidence in this case that, when the sale of J. D. Collins & Co. was made to Collins & Griffith, J. D. Collins & Co. were insolvent, or in an embarrassed financial condition, and that Collins & Griffith, or either of them, knew of such insolvency, or had notice or knowledge of facts which would put a reasonably prudent man on inquiry in relation thereto, which, if honestly and faithfully pursued, would have disclosed their insolvent condition; and if the jury further believe that the four hogs mentioned in the inventory, under a private agreement between J. D. Collins & Co. and Collins & Griffith, were not to pass under said bill of sale to Collins & Griffith, but were to remain the property of J. D. Collins & Co.; then this was a fraud on the existing creditors of J. D. Collins & Co., and rendered the sale void as to them, and the jury will find for the defendants."

13. "The jury may look to the attachment writs produced in evidence on the trial, and the returns of the sheriff thereon, and consider the same in connection with the other evidence in the case, in determining whether or not J. D. Collins & Co. had property liable to be levied upon to satisfy the debts of said J. D. Collins & Co."

14. "The evidence in this case shows that Collins & Griffith, at the time of the sale of the goods by J. D. Collins & Co. to them, had notice or knowledge of facts or circumstances which were calculated to arouse suspicion, or stimulate inquiry as to the real financial condition of J. D. Collins & Co."

15. "If they believe from the evidence in this case that J. D. Collins & Co., at the time of the sale by them to Collins & Griffith, were unable to pay their debts as they matured and became due in the ordinary course of business as persons carrying on such business usually do, in that currency which is made by the United States Government legal tender—"

16. "The evidence in this case shows that Collins & Griffith had notice of facts or circumstances, at the time of the purchase of the goods by them from J. D. Collins & Co., which were calculated to arouse suspicion as to the insolvency or failing financial condition of J. D. Collins & Co."

17. "The evidence in this case shows that Collins & Griffith, at the time of the sale of the goods by J. D. Collins & Co. to Collins & Griffith, had notice or knowledge of facts or circumstances which were calculated to arouse suspicion, or to stim-

[Smith v. Collins & Griffith.]

ulate inquiry as to the intent or purpose of J. D. Collins & Co. in selling their goods to them."

18. "If they believe from the evidence that the four hogs mentioned in the inventory were not intended to be sold to and passed to Collins & Griffith, but were under the arrangement or agreement between J. D. Collins & Co. and Collins & Griffith to remain the property of J. D. Collins & Co., then this rendered the sale fraudulent and void as to creditors of J. D. Collins & Co., and the jury will find for the defendants."

The rulings on evidence, the charges given, and the refusal of the charges asked, are assigned as error.

Lane & White, for appellants.

Gillespy & Smyer, Smith & Lowe, contra.

COLEMAN, J.—Creditors of J. D. Collins & Co. sued out certain attachments against the firm, which were levied by the sheriff upon a stock of goods as the property of the defendants in attachment. The plaintiffs in this suit, Collins & Griffith, brought the present action against the sheriff and his sureties, in trespass, claiming the goods as their property under a purchase from J. D. Collins & Co., made prior to the suing out of the attachments. The bona fides and validity of the sale to the plaintiffs by J. D. Collins & Co. was the issue in the trial court. Robert A. Collins, of the firm of Collins & Griffith, is a brother of J. D. Collins, and son of J. A. Collins, composing the firm of J. D. Collins & Co.

There seems to be no contest as to the validity of the debts of the plaintiffs in attachment, and of their existence at the time and prior to the sale of the goods. The evidence tends to show that the consideration paid by plaintiffs principally consisted in cash and a debt due Robert A. Collins from J. D. Collins and J. A. Collins, jointly but not as partners. There was one item of four hogs, valued at sixty dollars in the inventory. These hogs were returned to the vendors, and the agreed price for the whole purchase was credited with the amount of the sixty dollars. There are some general principles of law applying in such cases, which have been repeatedly declared by this court, but, as they seem not to be fully apprehended, we venture to repeat some of them again.

When a creditor attacks a sale of property made by his debtor as fraudulent, and proves the existence of his debt prior to the sale, the burden devolves upon the purchaser to show that he paid a fair and adequate consideration. After the purchaser makes this proof, then the burden shifts back

upon the creditor to show that the sale was made with a fraudulent intent, and that the purchaser knew of and participated in this intent. The law declares that an insolvent vendor, or one in embarrassed circumstances financially, who disposes of his property which is liable for his debts, and places it beyond the reach of legal process, and withholds the purchase-money from his creditor, is guilty of fraud; and a purchaser for a cash or present consideration of substantially all his property, who knows that his vendor is insolvent, or financially embarrassed, or who has knowledge of such facts as would put a reasonable man upon inquiry, and which, if followed up, would lead to a discovery of his insolvency or embarrassment, is a guilty participator in the fraud, and acquires nothing by his purchase, available against the creditors of his vendor.

The general charge of the court is not consistent with itself, and not in accord with these principles in several particulars. We specify only one. The court, after correctly instructing the jury as to the effect a knowledge of the insolvency of the vendor on the part of the vendee would have upon the purchase, in another part of the charge instructed the jury that, after plaintiffs showed a *prima facie* title to the property, "it devolves upon the defendants to show that plaintiffs' vendors were in failing circumstances or insolvent, and to show notice of that fact to the plaintiffs when they became the purchasers; when they have done that, it devolves upon the plaintiffs to show that they bought those goods for a valuable consideration—to show to the reasonable satisfaction of the jury what they have paid for them." This is error in two respects. *First*, in requiring the defendants to show that plaintiffs had knowledge of the insolvency of their vendors, before the plaintiffs were required to prove the payment of a valid consideration. The rule is, that when the proof shows that the attaching creditor's debts existed prior to the sale, the burden of proving the payment of the consideration devolves upon the purchaser, and after this proof is made, then the burden is shifted back upon the attaching creditors to prove that the purchaser had knowledge of the fraudulent intent, or insolvency of the vendor, or of his failing condition. The charge is also wrong in principle, in this, that impliedly it asserts that the purchase would be valid, if an adequate consideration was paid, although the purchasers had notice of the insolvent condition or fraudulent intent of their vendors.

The court holds that there is no reversible error in the charge to the jury in reference to the fact of relationship of the parties, and in giving charge No. 1 at the request of

plaintiffs, in which it was declared that the jury are sole judges of the weight to be given to the fact of relationship. The .charge asserts no incorrect proposition of law, and if deemed misleading, as falling short of the entire rule, the court holds that it was the duty of the complaining party to have asked for an explanatory charge.   In the case of *Reeves v. Skipper*, at present term, this question was considered at length, and the rule which governs in such cases settled.

That J. D. Collins & Co. were largely indebted at the time of the sale to plaintiffs, and that the sale tended to hinder and delay their creditors in the collection of their debts, is not seriously controverted.   A debtor possessed of ample means to satisfy all demands against him, as well as an insolvent debtor, may be guilty of a fraudulent intent in the sale of his property.   He may convert his property into money for the express purpose of putting it beyond the reach of his creditors, and a vendee who purchases with a knowledge or such fraudulent purpose, for a cash consideration, in law is a participator in the fraud.   Charge 2 given for plaintiffs ignores this contention, and is further objectionable, in that it does not hypothesize a want of knowledge or notice of facts, if such were proven on the trial to the satisfaction of the jury, calculated to put a reasonable man on inquiry, and which, if followed up, would have led to a discovery of either a fraudulent intent or the insolvency or failing condition of their vendors.   Charge No. 7 is subject to the first objection pointed out to charge No. 2.   Furthermore, it fixes the burden of proving knowledge or notice of insolvency upon defendants absolutely, without reference to the fact that the jury must be satisfied that plaintiffs paid a fair and adequate consideration, before this burden is shifted on defendants. We find no error in charges 3, 4, 5, and 6.   Charge 6 is substantially the same as that approved in *Kellar v. Taylor*, 90 Ala. 290.   Charge 4 may have called for an explanatory charge, but there is no error in the proposition asserted.

Charge No. 1 requested by defendants went too far, and was also argumentative, and was properly refused.   Charge No. 2 was argumentative, and there is no reversible error in its refusal.   If the jury believed the facts predicated in this charge, they were suggestive of fraud, and should have led to inquiry on the part of the purchasers; and if the charge had stopped here, it ought to have been given.   Near the conclusion of the charge it becomes argumentative.   Charges Nos. 3 and 7 were properly refused.   A debtor who has a sufficiency of property amenable to legal process to satisfy all legal demands, can not be said to be insolvent, although he

may not have money in hand to meet his liabilities as they fall due in the course of trade. Charge 4 was misleading, and properly refused. The validity of the transaction in this case is not affected by the use made of a part of the purchase-money by the vendor after the consummation of the sale, disconnected from any other facts implicating the purchasers in a fraudulent intent.

The following statement in charge 5, "which preference was to be exercised at their election after proceeds of sale came into their hands," renders the charge confused and uncertain. We fail to perceive its connection and bearing to the remainder of the charge. Charge 6 was properly refused. It is entirely legitimate for counsel to group facts and press them with reasonable inference in argument upon the jury, but altogether improper for the court to weigh the facts and draw the inference for the jury. The charge is argumentative, and objectionable in other respects. Charges Nos. 8, 9, 11, 14, 16, 17 involved disputed questions of fact, to be determined by the jury and not the court. Charge 10 was properly refused. It was predicated on nothing to render it legal.

Charges 12 and 18 were properly refused. The latter declares the sale to have been fraudulent and void, without reference to the financial condition or fraudulent intent of the vendors, or any knowledge or notice of their intent or condition on the part of plaintiffs. The charge, to be correct, necessarily involves the assumption that the purchasers were chargeable with notice of these facts.

We do not see the importance which has been attached to the matter of the hogs, except as argument for the jury. If the purchasers knew of a fraudulent intent on the part of their vendors, or were chargeable with knowledge or notice that they were insolvent, or in failing circumstances, or if culpably negligent in not making inquiry and following it up, the greater part of the consideration paid being a present consideration, and not the satisfaction of an antecedent debt of J. D. Collins & Co., the sale would be invalid as to the injured creditors, independent of and without reference to the sale of the hogs. On the other hand, if the purchasers were not thus chargeable, the question growing out of the sale of the hogs, as a matter of law, did not render the sale void. It was for the jury to say whether the explanation given was consistent with fair dealing, when considered in connection with the other evidence.

Charge 13 asserts the proposition, that the writs of attachment may be considered by the jury as evidence tending to show the financial condition of the defendant debtor; in

other words, that the writ of attachment was evidence of their indebtedness. The rule which prevails in this respect on a trial of the right of property rests upon different principles and practice than when the suit is in trespass by a vendee of the defendants in attachment. The issue is not the same.—*Pulliam, Rankin & Co. v. Newberry*, 41 Ala. 174.

Charge No. 15 is incomplete, and we are left to conjecture as to the intention of the pleader. Many of the charges give evidence of hasty preparation.

There is no power in the Circuit Court to compel the production of a deposition which is in the hands of a commissioner, taken by him under a commission from the Chancery Court, without an order authorizing it from the court which issued the commission. We do not decide that a court of law has any authority to compel a party at any time to produce his books in court, that they may be used in evidence against him. The rule is different in a court of equity. A failure, after legal notice, to produce books or other written documents in a court of law, which may furnish legal evidence in proper cases, authorizes the introduction of proof of their contents.

In testing the *bona fides* of a sale made by a partnership, it is competent for an attaching creditor to show the insolvency or embarrassed condition financially of the partnership debtor. For this purpose the books of the partnership may contain competent evidence, and, if furnished to him, may be introduced in evidence; or, upon a proper showing, the creditor may introduce evidence of the contents of the books. Whenever the financial condition of the debtor is material, whatever throws light on this question is admissible. To make such testimony available as against the purchaser, there must be additional proof, such as knowledge or notice of the condition of the vendor-debtor, or of facts suggesting further inquiry, and which, if honestly followed up, would lead to a knowledge of his condition. The court should not exclude testimony which is competent against one party, because not competent against another party to the suit. The testimony should be received, and its bearing limited and explained to the jury.

The plaintiffs had the right to be present during the trial notwithstanding their examination as witnesses.

Continuances are in the discretion of the trial court.

It was competent, as bearing on the question of a contemplated fraud, to show that J. D. Collins & Co., just before the sale to plaintiffs, ceased to make deposits of proceeds of sales of merchandise, and that J. D. Collins withdrew all cash

[Reeves v. Skipper.]

on deposit. It was also competent, in a legitimate way, as explanatory thereof, to show the circumstances which induced the cessation and withdrawal of the deposits.

The record is unduly incumbered with merely cumulative exceptions, and many which were merely elementary questions. There are fifty-four assignments of error. Less than half the number may be selected which raise every material question reserved by them all.

Reversed and remanded.