# Simmons *et al.* v. Shelton *et al.*

*Bill in Equity to set aside Sale as Fraudulent and Void.*

1. *Sale for cash by insolvent debtor; rights of purchaser; burden of proof; purchase money.*—A sale made by a debtor, who is insolvent or in failing circumstances, upon a valuable consideration, will be annulled at the instance of his creditors, if they show that the purchaser knew of the debtor's fraudulent purpose to put his property beyond the reach of his creditors, or had information which, if followed up, would have led to such knowledge; and if the purchaser who bought without such knowledge or information, afterwards discovers the existence of the fraudulent purpose, or becomes chargeable with knowledge thereof, he can not make further payment to the debtor, but he must hold the balance remaining due for the payment of the claims of the creditors of the seller.

2. *Same; case at bar.*—Where, on a bill filed to set aside a sale of a stock of goods as fraudulent and void, the proof shows that the purchaser paid a full price for the goods, had no notice of the insolvent or embarrassed condition of the seller, had known him for many years, and knew that he bore a good character, that the purchaser had recently lost his mercantile business by fire and was entitled to insurance upon it, that there was no secrecy about the transaction, that the accounts of the seller were not sold, but a portion of them had subsequently been collected by the seller and applied to his debts, among which was complainants', and that immediately after the sale the seller notified complainants of the same, asked the amount of their debt, promised to pay it and did pay something on it, such sale can not be said to be fraudulent and void.

3. *Fraudulent sale; reservation of benefit.*—Where a debtor disposes of his property to a creditor in payment of a *bona fide* debt which is an adequate price for the goods sold, the sale is not fraudulent because the husband of the debtor was afterwards employed as a clerk by the purchaser; there being no agreement, before the sale, for such employment.

4. *Payment by purchaser after notice; evidence.*—Where the evidence shows that suits were instituted against the debtor and the purchaser garnished, that he had made several payments of the purchase money

[Simmons *et al.* v. Shelton *et al.*]

to the debtor, but the time when they were made is not shown, such evidence is insufficient to show that the payments were made after notice of the embarrassed condition of the debtor.

5. *Judgment as evidence of debt.*—A judgment is evidence of the existence of a debt at the date of its rendition, but is not evidence against strangers that it existed prior thereto; and a judgment rendered against the vendor of a stock of goods a year after the sale, is not evidence of the indebtedness of the vendor at the time of the sale.

6. *Dismissal of bill without report of receiver.*—Where on a bill filed by creditors to set aside as fraudulent and void a sale of a stock of goods by their debtor, a receiver is appointed at the instance of the complainant, it is error to dismiss the bill without requiring the receiver to report and settle his account.

APPEAL from the City Court of Birmingham, in Equity.

Heard before the Hon. W. W. WILKERSON.

On the 3d of October, 1891, the appellants, C. S. and W. T. Simmons suing as Simmons & Co., filed this bill against D. W. and W. H. Peace, late partners under the name of D. W. Peace & Son, H. V. Peace, and W. P. and I. G. Wyatt, alleging that in June, 1891, D. W. and W. H. Peace were associated in business as a partnership under the firm name of D. W. Peace & Son, and were engaged in buying and selling goods; that they bought goods of complainants in June, amounting to $666.05, which they agreed to pay on 1st of July, 1891; and in July they bought other goods to the amount of $36.87, which they agreed to pay on 1st of August, following, on all of which, there remained a balance due, at the filing of the bill, of $447.30; that on the 3d day of July, 1891, said Peace & Son, executed to defendant, I. G. Wyatt, who was the wife of W. P. Wyatt, a bill of sale, purporting to convey to her their stock of goods; for which she paid in cash $75.00, and executed to them her five negotiable notes, of which notes four were for the sum of $250 each, and one for $550, which notes said W. P. Wyatt indorsed, and only one of them for $250, was due; that upon the execution of said notes, the possession of said stock of goods was turned over to said W. P. Wyatt, who has since been selling them, and has the remnant unsold in his possession; that he or his said wife, has certain moneys, (what amount not stated) the proceeds of said sales of goods, in their possession; that with money derived from such sales, or

other money furnished by said W. P. Wyatt, he has
added other goods to said stock, and the old and new
goods were so intermingled as not to be distinguishable;
that said stock of goods was of the value of $1,700, and
the remnant on hand, was not worth more than $400;
that said Wyatt claims he has had charge of all of said
goods as agent for his said wife, and that the proceeds of
such as were sold, and the remnant remaining in his
hands belonged to her; that said notes executed by said
I. G. Wyatt to said Peace & Son, were indorsed to said
H. V. Peace, who still held the same, and they were un-
paid; that the stock of goods so sold and transferred to
said I. G. Wyatt were the only assets of said Peace &
Son, except their claims against parties unknown to
complainants, and that said Peaces and Wyatts were
insolvent.

It was further alleged, that the conveyance of said
stock of goods by Peace & Sons, was made with intent
on their part, to hinder, delay or defraud their creditors,
of which intent the said W. P. and I. G. Wyatt were
at the time apprised; and the same was made in trust
for the use of said D. W. Peace & Son, or for the use of
one or the other of them; that said Wyatt and wife took
said conveyance and executed said notes, for the purpose
of hindering, delaying or defrauding their own and the
creditors of said Peace & Son; that there was no valuable
consideration paid by Mrs. Wyatt to said Peace & Son
for said goods, and that they are, and were, as between
Wyatt and wife, his property, and the entire debt owing
to Peace & Son, on account of said conveyance, was the
debt of said W. P. Peace; that the indorsement of said
notes by Peace & Son to said H. V. Peace, was without
valuable consideration and voluntary, made by Peace &
Son to hinder, delay or defraud their creditors, of which
intent said H. V. Peace was apprised at the time, and
held said notes in trust for said Peace & Son; that on
16th September, 1891, complainants entered suit in the
circuit court of Jefferson county against said Peace &
Son for the recovery of their debt, and in aid of said suit,
garnished said Wyatt and H. V. Peace to appear and
answer what sums they or either owed said Peace & Son.

Said parties were each made defendants to said bill,
and the prayer was that said D. W. and W. H. Peace
disclose the names of all persons indebted to them as

late partners, and the amounts owing by each respectively; that H. V. Peace be enjoined from selling or disposing of said notes, and the said Wyatts from making any payments on them, and that H. V. Peace be required to file said notes in court; that a receiver be appointed; that said conveyance of said goods be declared void against complainants, and the goods sold for the benefit of complainants; for a decree against said D. W. Peace for any payments that might have been made to him on said notes, and for personal decrees against said D. W. and W. H. Peace, and W. P. and I. G. Wyatt for such amount of their debt to complainants as should remain unpaid. A receiver was appointed on the 9th of October, 1891.

The bill was answered by each defendant, and all charges of fraud as alleged against each were specifically denied. The Wyatts averred that they were *bona fide* purchasers of said goods, without any actual or constructive fraud. The Peaces averred in their answer that they sold said stock of goods to said I. G. Wyatt for the sum of $1,546.64, she paying in cash therefor, in notes as alleged; that one of said notes for $250 had been paid in full and delivered to said Wyatt, by the transfer and delivery of goods by said Wyatt to creditors of respondents, and the others were due and unpaid excepting a credit of $101.05 on one of them; that said notes were, on the day following their execution, transferred and assigned in good faith to H. V. Peace in payment of a debt long past due to him by respondents, which were so accepted, and they are now his property, and that it was not true, that said I. G. Wyatt paid on said purchase, the sum of $75 in cash; that said W. P. Wyatt having been burnt out in Birmingham, and respondents hearing of his loss, went to said Wyatt and offered to sell to him their stock of goods, and a trade was concluded therefor in the name of I. G. Wyatt; that they did not know in whose name the burnt stock of goods had been carried, and it was only long afterwards that they ascertained that said destroyed goods were held in the name of said W. P. Wyatt; that said Wyatt had an insurance policy of $700 on his goods which had not been collected, and that the sum, when collected would be applied towards the payment of said notes, but the same has never been collected and so applied.

[Simmons *et al.* v. Shelton *et al.*]

It was denied that said Wyatts were apprised of any fraudulent intent on the part of respondents in making said sale and conveyance of said goods to them; that they were instructed to make the conveyance to said I. G. Wyatt, but they had no knowledge or information of any fraudulent intent on the part of W. P. or I. G. Wyatt, in having it so made, and both of them are liable on said notes. Of the notes and accounts held by respondents at the time of their sale to said Wyatts, the sum of about $1,000 or $1,200 had been collected and applied towards the payment of creditors of respondents, and they had used none of the same for their individual purposes. They attach a schedule of those uncollected. H. V. Peace answered, adopting the answers of D. W. and W. H. Peace as to his ownership of said notes, and denying any knowledge or information of any fraud on the part of the other defendants, as alleged in the bill.

On the 26th May, 1892, complainants amended their bill, alleging, that after the original bill had been filed, and before a receiver had been appointed in the cause, W. P. Wyatt delivered to L. B. Shelton and W. W. Harkins, parties in business as Shelton & Company, the unsold remnant of said stock of good in their possession, of the value of $500, and Shelton & Company had disposed of said goods; that said delivery was made to Shelton & Co. by said W. P. and I. G. Wyatt, for the purpose of putting them out of complainants' reach, and for hindering, delaying and defrauding complainants of their relief prayed in their original bill, and said Shelton and Harkins shared in such purposes, or knew that such was the purpose of said parties, and that they knew, at the time, of the facts stated in the original bill, and of the conveyance as therein charged, or of other facts (not stated) from which, by due investigation, they would have discovered that such conveyance was made with the intent on the part of said Peace & Son to hinder, delay or defraud their creditors, and that said Wyatts shared in such purpose.

By this amendment, said Shelton and Harkins were made parties to the bill, and the prayer is for a decree for $500 against them, and for general relief.

Shelton and Harkins answered denying specifically all allegations of fraud as charged. And as to their connection with the transaction, they aver that they had

[Simmons *et al.* v. Shelton *et al.*]

sold goods to Peace & Son, before they sold to said
Wyatt, and said Peace & Son were, at the time they
sold to Wyatt, indebted to respondents in the sum of
$36, which said I. G. Wyatt assumed to pay; that
respondents sold goods to I. G. Wyatt, from time to
time, after their purchase from said Peace & Son, and
were, on October 1, 1891, indebted to respondents in the
sum of $510.37 including said $36; that respondents de-
manded payment of this debt from I. G. Wyatt, and she
said she was unable to pay the same. Thereupon, re-
spondents purchased goods of her, in part payment of
their said debt, to the value of $447.02, there not being
goods enough to pay the entire debt by $63.25; that said
sale was made to respondents before the filing of the
original bill, and nearly all the goods as purchased by
respondents from I. G. Wyatt, had been sold by them to
her and not paid for; that they paid a full and adequate
price for the goods purchased. They attach a bill of
sale for said goods, with a list of prices, dated October
1, 1891.

All the other defendants answer denying the allega-
tions of fraud as to them. The other facts of the case
are sufficiently stated in the opinion.

On the final hearing on pleadings and proof, the chan-
cellor decreed that complainants were not entitled to the
relief prayed and dismissed the bill. From this decree
complainants appeal, and assign the rendition thereof
as error.

BEN CARTER, for appellants.—A conveyance made by a
debtor who is insolvent or in financial distress for a
cash consideration, with no provision to pay his debts,
if the grantee had actual or imputed knowledge of the
financial condition of the grantor, is fraudulent and inop-
erative as against the creditors of such grantor. The
grantor's purpose in making such a conveyance is held,
as matter of law, to be fraudulent.—*Smith v. Collins*,
94 Ala. 394; *Montgomery v. Bayliss*, 96 Ala. 342. The
subsequent appropriation of part of the proceeds of such
a conveyance to payment of some of his debts, will not
vindicate the purpose of the grantor, and make the con-
veyance good. The power of election, which is secured
by the creditor to pay or not to pay his debts, condemns
the conveyance.—*Smith v. Kaufman*, 94 Ala. 364; *Leh-*

*man v. Kelly*, 68 Ala. 192. In such a case knowledge of any debt of the grantor unprovided for is sufficient to charge the grantee with full knowledge of the grantor's condition and purpose.—*Smith v. Kaufman*, *supra;* *Chipman v. Glennon*, 98 Ala. 263.

Where property is originally fraudulently purchased, whether in fraud of the vendor or of the vendor's creditors, a sub-vendee, who, in payment of the same merely gives such original vendee a credit on an antecedent debt due to him (the sub-vendor), is not a purchaser for value entitled to protection against the complaint of the person originally defrauded.—*Loeb v. Flash*, 65 Ala. 527; *Loeb v. Peter*, 63 Ala. 243; *Spira v. Hornthall*, 77 Ala 137.

When, in defense against the attack of a creditor of the grantor, the grantee asserts as the consideration of a conveyance an antecedent debt due to himself from the grantor, a presumption of *mala fides* attaches to the transaction.—*Mobile Sav. Bank v. McDonnell*, 87 Ala. 746; *Calhoun v. Hannan*, 87 Ala. 277. In such case this court inclines to demand from such grantee the clearest, most persuasive proof which reasonably, under the circumstances, can be supposed to exist, and will visit on him every circumstance of suspicion which is disclosed by close scrutiny of his proof.—*Page v. Francis*, 97 Ala. 379; *Robinson v. Moseley*, 93 Ala. 70; *Owens v. Hobbie*, 82 Ala. 469; *Hubbard v. Allen*, 59 Ala. 283; *Ziegler v. Carter*, 94 Ala. 292; *Moog v. Barrow*, 101 Ala. 209; *Lehman v. Greenhut*, 88 Ala. 478; *Wedgworth v. Wedgworth*, 84 Ala. 274.

Shelton & Co. were not "purchasers" for value, because by way of paying for these goods they merely gave Mrs. Wyatt credit on her account due them, surrendering nothing. They still held against her the balance of the account. In case of a decree against them in this suit, they have but to charge her again with the value of the goods, and they are *in statu quo*. This is not a purchase for value.—*Loeb & Bro. v. Flash*, 65 Ala. 526, and *Loeb & Bro. v. Peter*, 63 Ala. 243.

A sale by an insolvent debtor, in which he, besides paying a debt, secures remunerative employment for himself, will be set aside at the suit of his creditors, and in determining whether such engagement of the grantor by the grantee was part of such contract of sale, the court will not require literal, affirmative proof,

but will be governed by reasonable deduction from the circumstances.—*Page v. Francis*, 97 Ala. 382.

W. M. SPENCER, *contra*.—The bill seeks to set aside sales on the ground of fraud. The burden of proving fraud in said sales is upon the complainants, which they failed to do.—*Hodges v. Coleman*, 76 Ala. 103 ; *Florence S. M. Co. v. Zeigler*, 58 Ala. 221.

HARALSON, J.—1. The principle underlying the question as to whether the sale from Peace & Son to I. G. Wyatt was fraudulent, has been well settled by our former adjudications, and is, that a sale or conveyance upon a new consideration, though valuable, made by a debtor who is insolvent, or in failing circumstances, will be set aside at the instance of his creditors, if the purchaser or grantee participated in it or knew that the purpose of the debtor was to place his property beyond the reach of his creditors, or had such information as charges him with notice of that purpose. The burden of making this proof is on the attacking creditor.—*Florence Sewing Machine Co. v. Zeigler*, 58 Ala. 221 ; *Cromelin v. McCauley*, 67 Ala. 548 ; *Smith v. Collins*, 94 Ala. 394. But if the purchase be made without such knowledge, and without such information as reasonably to put the purchaser on inquiry, he acquires a good title, no matter how fraudulent the intent of the seller. If the purchaser, before full payment, is chargeable with knowledge of the fraudulent intent of the seller, he is not permitted to make further payments, but must hold the same for the paramount claims of the creditors of the seller.—*Crawford v. Kirksey*, 55 Ala. 282 ; *Lehman v. Kelly*, 68 Ala. 202 ; *Smith v. Collins*, 94 Ala. 394.

2. The contention here, it may be well to state, is not as to a debt by the Wyatts to complainants, but in respect to a debt alleged to be owing by Peace & Son to complainants. The fraud alleged is as to the sale by Peace & Son to W. P. Wyatt for his wife, I. G. Wyatt, in which the latter is averred to have participated, so as to hinder, delay and defraud the complainants in the collection of their debt against Peace & Son. If Wyatt procured the conveyance of the goods from Peace & Son to his wife, as is alleged, to hinder and delay his creditors, that fact, if established, is of no consequence here,

since Wyatt was not a debtor of complainant, and the rights of no creditor of his are involved in the litigation.

It may be admitted, since it reasonably enough so appears, that at the time of the alleged fraudulent sale by Peace & Son to Wyatt, Peace & Son were the debtors of complainant, by open account, in the sum of $447.30.

For the purpose of showing that the sale of Peace & Son to Wyatt was fraudulent, the complainants examined said W. P. Wyatt as a witness. His evidence tends to show, without conflict, that the price his wife agreed to pay for the goods and fixtures, and for which their notes, which it is averred in the bill were negotiable, were given, was full and adequate. The notes were for about $1,550. He testified, that the goods and the store fixtures which he bought, were not in fact worth more than from $850 to $900.

He was asked the question, if at the time of this purchase he knew that Peace & Son owed anything, and he answered, he did not and had no knowledge of it. He was also asked, if he knew whether Peace & Son's creditors were pressing them at the time, and he replied he did not know anything about it. This statement was made on his first examination. Afterwards he was recalled by complainants, and examined a second time, and he was again asked, if when the goods were purchased by him for his wife, he knew that Peace & Son owed any debts, and he again responded, he did not. He was also asked to state any facts tending to show why he did not, and he replied, that he had no idea in the world of buying out Peace & Son, until one of them, W. H. Peace, came to his place, as he supposed, to see him, and called his attention to it; that that conversation lasted only about twenty minutes, and the next morning, he went over to Peace & Son's place of business to see about the proposed sale, that they agreed as to the kind of trade they would make, and the day following, they took an account of the stock, and that, before the sale, no facts or circumstances came to his knowledge to cause him to suspect or know that Peace & Son owed any debts. He also swore, that he had known D. W. Peace about ten years, but not intimately; that he knew him in Crawford, Miss., where they both resided before removing to Birmingham; that Peace was a religious man and he, Wyatt, was in the saloon busi-

ness, next door to him, and they both were burned out there, when the whole town was burned up ; and before this sale, he had not seen Peace & Son for six months, and knew nothing of their being pressed by their creditors.

The complainant offered other proof tending to show that Peace & Son owed other debts besides the one to them ; that some of their creditors were pressing them, and that their commercial credit was not good. On the other side, the proof tended to show, that they had been extended and enjoyed good credit in the town, and had been in the habit of paying their bills every week.

Wyatt, who was in the same business, had just been burned out, and his stock was insured. It was natural to suppose that he would desire again to start his business, and to buy a stock of goods, if he could, on such terms as would enable him to do so. There was no secrecy about the transaction, and no proof that the Wyatts knew at the time that Peace & Son were insolvent or embarassed, or were attempting a transaction to defraud their creditors. Peace & Son transferred the purchase money notes for the goods to H. V. Peace, in part payment of a debt they owed him. Their accounts and claims, amounting to from $1,500 to $1,700, they did not sell or dispose of, but proceeded to collect, applying the collections, amounting to about $1,000 or $1,200, to the payment of their creditors, including the complainants. They were enjoined in this case from collecting the others. The next day after the sale to Mrs. Wyatt, they went to the complainants and told them of the sale to Wyatt, and asked for the amount of their own account, promising to pay the same, and afterwards, before this bill was filed, had paid them over $200.

Without further reviewing the evidence, of which there is a great mass, it is sufficient to add, that on the evidence, we must agree with the chancellor, that the sale does not appear to have been an invalid one.

3. As to the subsequent sale by Wyatt to Shelton & Co., there appear no reasons for questioning its validity. The existence and *bona fides* of the antecedent debt, due by I. G. Wyatt to these parties, constituting the consideration of the sale, are fully and satisfactorily established, without conflict in the evidence ; and the price

paid was adequate and fair. An attempt was made to show, that a benefit was reserved to Mrs. Wyatt, in that Shelton & Co., after their purchese, employed her husband as a clerk, but the evidence of Wyatt and Shelton leaves no room for the charge. Wyatt swore that he and his wife had no interest whatever in the goods and that he was employed after the sale. Shelton swore, that at the time of the agreement for the sale, there was not a word said about employing Wyatt as a clerk; he did not know that he would be employed, and he was not employed until the day afterwards. Shelton & Co. needed a clerk to sell the goods, and Wyatt, acquainted with the stock and the customers of the store, it would seem, if not the best, was, at least, a very fit person to be employed for the purposes. Shelton & Co., according to the evidence, had no intimation or knowledge that complainants regarded the sale from Peace & Son to Wyatt as fraudulent, or that they or anybody else questioned its fairness or intended to call it in controversy. Three months had elapsed since that sale, and Wyatt had been conducting his business as before, buying most of his goods from Shelton & Co. They certainly had the right to buy, to save their debt, if that was their purpose. Wyatt had a right to prefer them, if that was her purpose and that of her husband, and the sale, for these reasons, could not be disturbed. The proof established that this purchase was made and the goods delivered before this bill was filed and a receiver appointed.

The only evidence tending to show that Wyatt, after the sale, acquired knowledge of the fact that Peace & Son were indebted at the time of the sale, was that furnished by himself on his examination by complainants. He stated that he suspected, within two or three days after the sale, that they owed money; that parties came in and said that they owed them, and they did not deny it. But this was not, without more, sufficient to charge him with knowledge of Peace & Son's alleged fraud, such as would reasonably put him on inquiry concerning it. They might have owed debts without having any intention to delay or defraud their creditors. It was not calculated, under the circumstances of this case, to arouse suspicions of their insolvency.

The complainants make the further point, that Peace

[Simmons *et al.* v. Shelton *et al.*]

& Son were sued by these complainants in the city court of Birmingham on the 16th day of September, 1891, and said W. P. Wyatt was garnished therein as debtor to the defendants; that, on the 22d September, 1891, Collins & Co. sued said defendants in said court and garnished Mrs. I. G. Wyatt and H. V. Peace, and that these facts gave said Wyatt notice, that said Peaces were insolvent or in failing circumstances, and he is liable, therefore, for any money he may have paid on the Peace & Son notes, after such notice. It is shown by Wyatt, that he paid on these notes about $600; from $200 or $300 in money, and the balance in an account he held against one McPolland, which W. H. Peace agreed to be liable for. When it was that the cash payments were made is not shown, but it does appear that the McPolland debt existed before the notes were made. We are not authorized under this evidence, to draw the inference, that these payments were made after the institution of said suits against Peace & Son, in which said Wyatt was garnished, and the proof fails to show that Wyatt made any payments after the notice of the alleged insolvency or failing condition of Peace & Son, of which, it is contended, such proceedings gave notice to Wyatt. No personal judgment or decree can be rendered against Wyatt on this evidence.

6. No personal decree is prayed against H. V. Peace, except for any payments that may have been made to him by Mrs. Wyatt on the notes transferred to him within the amount of complainants' debt. It is not shown that he ever received a dollar on the notes. The prayer as to these notes is, that "said notes to I. G. Wyatt be decreed to be void and for nothing held."

7. It may be added, that the proofs submitted do not show that Peace & Son were insolvent at the date of the filing of the bill, nor when they sold out to Mrs. Wyatt. They sold, as has been seen, for between $850 and $900, making no sale of their book accounts and choses in action, amounting to between $1,500 and $1,700. It is true the complainants offered in evidence several judgments which were recovered against them in 1892. It was agreed between the parties, in respect to the transcript of judgments offered in evidence, that they did not show they were valid or subsisting judgments or causes of action against the defendants, or

[Forst, *et al.* v. Leonard, *et al.*]

that such judgments had been paid in whole or in part. A judgment is conclusive evidence of the existence of a debt at the date of its rendition, but is not evidence against strangers that it existed at any time anterior thereto.—*Lawson v. Ala. Warehouse Co.*, 73 Ala. 289; *Yeend v. Weeks*, 104 Ala. 331; *Troy v. Smith*, 33 Ala. 471. Outside of these judgments, the proofs do not satisfactorily establish the insolvency of said Peace & Son.

8. There was a receiver appointed in the case, and the decree dismisses the bill without requiring him to report and settle his account. The bill should not have been dismissed without requiring him to settle. The dismissal will be set aside, and the decree corrected to the extent of requiring the receiver to file his written report in the court below, within ten days after being notified of this order, showing what property or money he has received, in order that his receivership may be finally settled, and as thus corrected, the decree of the court below is affirmed. The clerk will cause a copy of this order to be served on the receiver.

Corrected, affirmed in part, and remanded in part.